2009 VT 90

# Kimberley Payne v. US Airways, Inc., Michael Cline, Tony Stanley and Deb Ansaldi

[987 A.2d 944]

No. 08-128

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed September 25, 2009

Motion for Reargument Denied October 20, 2009

*Thomas C. Nuovo* of *Bauer, Gravel, Farnham, Nuovo, Parker & Lang,* Burlington, for Plaintiff-Appellant.

*John A. Serafino* and *Glenn S. Morgan* of *Ryan Smith & Carbine, Ltd.,* Rutland, and *Jeffrey I. Kohn* of *O'Melveny & Myers LLP,* New York, New York, for Defendant-Appellee Cline.

¶ 1. **Burgess, J.** Plaintiff appeals from a superior court order granting summary judgment to defendant Michael Cline on plaintiff's claims that he is not personally liable to her for acts of discrimination and retaliation under the Vermont Fair Employment Practices Act (VFEPA) and the Workers' Compensation Act (WCA). The central issues on appeal are whether the acts provide a right of action against a coemployee or supervisor in an individual capacity, rather than imposing direct and vicarious liability on employers only for unlawful discrimination by their supervisors and employees. The superior court concluded that the acts provide a right of action against employers alone, and not against individual employees or supervisors. We reverse and remand.

## I. Background

¶ 2. Plaintiff originally sued her former employer, US Airways, M. Cline, her former supervisor at US Airways, and several former coworkers for: sexual harassment and discrimination against a person with a disability under the VFEPA, discrimination for filing a complaint under the VFEPA, discrimination for filing a workers' compensation claim, and several other claims. After US Airways filed for bankruptcy, which placed an automatic stay on her action, plaintiff settled with US Airways so that she could proceed with her claims against the individual defendants. Plaintiff eventually dropped her former coworkers as defendants and, consequently, the sole remaining defendant in this action is her former supervisor, whom plaintiff now seeks to hold liable under the VFEPA and the WCA.

¶ 3. When reviewing a grant of summary judgment, we use the same standard as the trial court. *Savage v. Walker*, 2009 VT 8, ¶ 5, 185 Vt. 603, 969 A.2d 121 (mem.). We must take all allegations of the nonmoving party as true, and uphold the grant of summary judgment only when "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.*; see also V.R.C.P. 56(c). Accordingly, we recite the background facts of this case as they have been alleged by plaintiff.

¶ 4. The events giving rise to this lawsuit began in the spring of 1999, when, during her employment with US Airways, plaintiff suffered a work-related back injury. After learning of her injury, plaintiff's supervisor did not observe WCA mandates when he failed to promptly investigate her complaint to determine whether

compensation was due, forced her to use sick leave as compensation for the work days she missed while recovering from the back injury, interfered with her course of treatment, and then, after she requested WCA benefits, told her she could not receive any compensation retroactively. According to the record, supervisor did not allow plaintiff workers' compensation for missed work until she filed a claim with the Department of Labor, complaining of US Airways' failure to compensate her through the WCA system.

¶ 5. When plaintiff returned to work in June 1999, she was on a limited work schedule to accommodate her recovery. Supervisor interfered with plaintiff's medical treatment by calling her physical therapist to request that the therapist approve longer work hours. Additionally, supervisor began to have individual meetings with plaintiff to criticize her performance, to take away some of her supervisory duties, and to consult about her — as he had not before — with the employees she was supposed to supervise. Prior to these actions, plaintiff and supervisor maintained a problem-free work relationship, and plaintiff's employment record, covering about ten years with US Airways, reflected only positive evaluations of her work. In July 1999, plaintiff complained directly to US Airways about supervisor's treatment of her. About a month after her written complaint to the company, when she felt that the company was not responding appropriately, she filed a complaint for workplace discrimination against US Airways with the Vermont Attorney General.

¶ 6. In November 1999, plaintiff took another medical leave from her job, this time claiming anxiety and depression from her workplace conditions, not because of her back injury. For the next two years, plaintiff did not return to work. During this time, plaintiff's doctor and therapist submitted letters to US Airways stating she was suffering anxiety and depression "clearly related to and aggravated by her ongoing stressful work situation," and recommending that plaintiff not return to work until her workplace problems could be successfully mediated. US Airways terminated plaintiff's employment in October 2001. In its termination letter, the company stated that plaintiff failed to abide by the US Airways policy of providing supplemental medical reports and seeking an extension of medical leave every ninety days, and this failure led the company to conclude that she had apparently abandoned her employment. The Attorney General's Office com-

pleted its investigation of plaintiff's discrimination complaint in April 2002 and agreed that plaintiff had been subject to discrimination for asserting a workers' compensation claim, but determined that there was insufficient evidence to support plaintiff's claim that US Airways discriminated against her based on gender. Plaintiff filed this lawsuit in May 2002.

## II. Individual Liability under the Vermont Fair Employment Practices Act

¶ 7. Plaintiff's amended complaint states VFEPA claims against supervisor for: sexual harassment, 21 V.S.A. §§ 495(a)(1), 495d(13), discrimination for lodging complaints against US Airways with the Vermont Attorney General's Office and with the Vermont Department of Labor and Industry, *id.* § 495(a)(5), and discrimination for being perceived to suffer from a handicap, *id.* § 495(a)(1). Supervisor's motion for summary judgment on these claims argued first, that there is no provision for individual liability under the VFEPA and second, that plaintiff failed to make a prima facie showing of sexual harassment or discrimination based on disability or handicap. The superior court granted summary judgment for supervisor based on its determination that there is no individual liability under the VFEPA.[1]

¶ 8. The VFEPA prohibits "any employer, employment agency, or labor organization" from engaging in a range of discriminatory acts and practices. *Id.* § 495(a). The term "employer" refers to "*any* individual, organization, or governmental body . . . whether domestic or foreign . . . and *any agent of such employer*, which has one or more individuals performing services for it within this state." *Id.* § 495d(1) (emphasis added). Plaintiff argues that the term "any agent of such employer" extends liability to employees, as individuals, who engage in discriminatory actions forbidden by the VFEPA.

---

[1] Defendant argues that we can affirm the superior court's decision based on the lack of a prima facie case for discrimination. We do not take the court's aside that it was "mindful that Plaintiff has not alleged acts of unwanted sexual conduct by [defendant] and claims that she is not capable of performing the essential functions of her job" as a ruling on whether plaintiff made a prima facie case under the VFEPA. Further, we note that plaintiff's amended complaint relied on at least one provision of the VFEPA under which defendant did not argue that plaintiff failed to state a prima facie case. While we sometimes choose to reach issues that were not decided by the trial court, see *Towns v. N. Sec. Ins. Co.*, 2008 VT 98, ¶ 16 n.4, 184 Vt. 322, 964 A.2d 1150, we choose not to do so in this case.

■ ¶ 9. This Court has yet to construe the term "any agent" in the context of the VFEPA. While the question has been raised here in at least two earlier cases, we have never reached it before today. See *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 49, 176 Vt. 356, 848 A.2d 310 (upholding summary judgment for defendants on other grounds, thus not reaching the issue of individual liability); *Gallipo v. City of Rutland*, 173 Vt. 223, 238-39, 789 A.2d 942, 953-54 (2001) (not reaching the issue because separate statutory provision dictated that municipal officers could not be sued in their individual capacities).[2] As with any issue of statutory construction, we seek here to give effect to legislative intent. To do so, we start with the language of the statute and read it according to its plain and ordinary meaning. *Burlington Elec. Dep't v. Vt. Dep't of Taxes*, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990). Under this approach, the Legislature's use of the conjunctive "and any agent" in the definition of "employer" in the VFEPA signals that the Legislature intended that, in addition to those traditionally categorized as employers, agents of the employer can be held liable. The employer-employee relationship is a traditional, common-law agency relationship. Restatement (Third) of Agency § 1.01 cmt. c (2006). Thus, an ordinary reading of the language "any agent" supports the conclusion that the statute allows for suits against employees acting as agents for the employer. Although no ambiguity exists on the face of this statutory definition, and thus we would ordinarily simply enforce the statute according to its plain meaning, *State v. O'Dell*, 2007 VT 34, ¶ 7, 181 Vt. 475, 924 A.2d 87, supervisor entreats us to consider the large body of federal law reaching the opposite conclusion with respect to the federal Fair Employment Practices Act. 42 U.S.C. § 2000e(b).

■ ¶ 10. Our construction of the VFEPA, which is patterned on Title VII of the federal Civil Rights Act protecting against employment discrimination based on race, color, religion, sex, or national origin, is often guided by the federal courts' interpretations of Title VII. *Lavalley v. E.B. & A.C. Whiting Co.*, 166 Vt. 205, 209, 692 A.2d 367, 369 (1997). Indeed, we have said that "[the V]FEPA is patterned on Title VII of the Civil Rights Act of 1964, and the standards and burdens of proof under [V]FEPA are

---

[2] Additionally, in a case where the issue was not raised, we allowed a suit for sex discrimination under the VFEPA to proceed against a supervisory employee as an individual. *Graff v. Eaton*, 157 Vt. 321, 598 A.2d 1383 (1991).

identical to those under Title VII." *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 161, 624 A.2d 1122, 1128 (1992). Supervisor points out that it is settled law in every federal circuit that has considered the meaning of the term "any agent" in Title VII's definition of "employer," 42 U.S.C. § 2000e(b), that the phrase does not provide a right of action against individual employees. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998) (citing cases from the Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and District of Columbia Circuits of the United States Courts of Appeals).[3] Indeed, the federal consensus is that the "any agent" language expresses congressional intent to hold employers vicariously liable for the acts of their employees, but not to hold employees individually liable for their own discriminatory acts in the workplace. See, e.g., *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405-06 (6th Cir. 1997). The definition of "employer," however, is not a "standard[] or burden[] of proof" as described in *Hodgdon*. Cf. *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 9, 184 Vt. 1, 955 A.2d 1082 (discussing standard for prima facie VFEPA case by reference to federal Title VII case law); *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 15, 178 Vt. 244, 882 A.2d 1177 (same). Moreover, as demonstrated below, the definition of employer in the VFEPA is markedly and substantially different than that used in Title VII. Thus, even if the term "any agent" is identical in both definitions, the definitions as a whole are far from identical, which implies that we have no duty to interpret the VFEPA's definition of "employer" identically to how the federal courts have interpreted Title VII's definition. And although federal decisions can be persuasive, they are not binding and "we will not adopt an interpretation of [V]FEPA solely because the federal courts, including the United States Supreme Court, have so interpreted Title VII." *Lavalley*, 166 Vt. at 209-10, 692 A.2d at 369-70.

¶ 11. While our past decisions demonstrate that we may depart from federal interpretations of Title VII when we construe our own fair employment practices law, it is important to explain why the federal analysis is particularly unpersuasive in this case. The definition of "employer" in the federal FEPA of Title VII is, in pertinent part:

---

[3] As of this writing, the United States Court of Appeals for the First Circuit has not considered the issue.

a person engaged in an industry affecting commerce . . . , and any agent of such a person . . . , except that . . . persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

42 U.S.C. § 2000e(b). In holding that this definition connotes only vicarious liability for employers, and not individual liability for their agents, federal courts have relied on two main rationales. The first is that the federal definition expressly excludes small businesses from liability by excluding any employer who employs fewer than twenty-five people. For example, the Fourth Circuit reasoned that "it would be incongruous to hold that Title VII does not apply to the owner of a five-person company but applies with full force to a person who supervises an identical number of employees in a larger company." *Lissau*, 159 F.3d at 180. The federal courts have also noted that the definition of "employer" in Title VII is "essentially the same" as the definition in the Age Discrimination in Employment Act (ADEA). 29 U.S.C. § 630(b); *Wathen*, 115 F.3d at 404 n.6. Because the courts have held that there is no individual liability for age discrimination under the ADEA, based on similar reasoning regarding the small-employer exclusion, they have held that it is merely a logical extension of the ADEA case law to hold that Title VII does not impose individual liability for employment discrimination based on race, color, religion, sex, or national origin. *Lissau*, 159 F.3d at 181.

¶ 12. This logic cannot apply to the VFEPA. Vermont's law contains no small-business exclusion. In fact, the definition of "employer" in the VFEPA expressly includes any employer who has but a single employee within the state. Moreover, Vermont's definition of employer includes "any agent" of such employer, regardless of size.

¶ 13. The other rationale relied on by the federal courts for excluding individual liability under Title VII relates to the enforcement provisions in that statute. 42 U.S.C. § 2000e-5. Originally, relief included only "back pay and equitable relief such as reinstatement," which are remedies available only from an actual employer, not from a mere supervisor or fellow employee. *Lissau*, 159 F.3d at 181; accord *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). In 1991, Congress amended the relief provisions to include compensatory and punitive dam-

ages. 42 U.S.C. § 1981a, *as amended by* Pub. L. No. 102-166, 105 Stat. 1071 (1991). However, the amendments tied the amount of damages available to a plaintiff "to the size of the employer." *Lissau*, 159 F.3d at 181; accord *Tomka*, 66 F.3d at 1315. Federal courts interpret this relationship between available relief and the size of the employer as another indication that Congress did not intend for Title VII to provide a statutory cause of action against agents or supervisory employees of employers. Further, because there is no mention of "individual liability as an available remedy," even in the 1991 amendments, when Congress could have added it if it saw a need, the courts conclude that Title VII provides no such avenue of relief for potential plaintiffs. *Lissau*, 159 F.3d at 181.

■ ¶ 14. The VFEPA does not similarly limit its remedies to relief typically available just from employers rather than individuals working for the same company. The VFEPA originally contained a single penalty provision stating that any employer "who willfully violates any of the provisions of this act, shall be fined not more than $500.00 for each violation." 1963, No. 196, § 3. In 1976, the Legislature amended the penalty section generally, and recodified it as 21 V.S.A. § 495b. 1975, No. 198 (Adj. Sess.), § 2. The new provision allowed the Attorney General or state's attorneys to enforce the act "by restraining prohibited acts, seeking civil penalties, obtaining assurances of discontinuance and conducting civil investigations in accordance with the procedures established in [the Consumer Fraud Act] as though an unlawful employment practice were an unfair act in commerce." *Id.* It also provided that the superior courts could impose the same civil penalties and costs, and any other relief for the State or injured employee, as they could under the penalty provisions of the Consumer Fraud Act. *Id.* Finally, the 1976 amendment to the VFEPA provided that the superior courts could "order restitution of wages or other benefits . . . and may order reinstatement and other appropriate relief on behalf of an employee." These changes provided that the penalties could go toward making the injured employees whole, instead of merely punishing the employers. Further, it is apparent from these amendments that the Legislature intended that employers could be forced to stop discriminatory practices and incur liabilities substantially greater than a $500 fine.

¶ 15. The 1976 amendments retained remedies usually imposed on traditional employers in control of payroll and hiring, rather than coemployees or supervisors who might not enjoy such powers, but later changes — many of which occurred before the 1993 addition of the term "any agent" to the VFEPA definition of employer — evinced an even more definite expansion of the remedial scheme. The Legislature amended the penalty and enforcement provisions again in 1981 — twelve years prior to the "any agent" amendment — adding subsection (b), which allows a private right of action by injured employees against an employer who violates the VFEPA. In this subsection, any "person aggrieved by a violation" may seek "damages or equitable relief, including restraint of prohibited acts, restitution of wages or other benefits, reinstatement, costs, reasonable attorney's fees and other appropriate relief." 1981, No. 65, § 2. In 1999, the Legislature specified that the damages available under the private right of action included "compensatory and punitive." 1999, No. 19, § 5. 21 V.S.A. § 495b(b). Any one of those remedies can be extracted from an individual agent or coemployee, as well as from the traditional employer.

¶ 16. Reference to the penalty provisions for federal Title VII violations as interpretive support for the conclusion that Title VII allows for only respondeat superior liability does not transfer with equal force to the VFEPA context. Comparison of the VFEPA penalty provisions and the federal penalty provisions illustrates that the VFEPA never existed in a form where a private right of action could be remedied by solely equitable remedies, which an employer, but not a supervisor, would be in a position to provide. Further, the VFEPA does not tie the size of the possible damages award to the size of the employer, and there is no restriction on the damages available — such as limiting the equitable remedy to back pay — that suggests the Legislature intended that employers alone would be liable for VFEPA violations. Consequently, the rationales of the federal courts provide no basis for interpreting the VFEPA to mean that employees cannot be held liable as individuals.

¶ 17. Decisions by other state courts construing their own Title VII-patterned state statutes can also inform our construction of the VFEPA. *Lavalley*, 166 Vt. at 210, 692 A.2d at 370. Nearly half of the states define "employer" in their antidiscrimination statutes similarly to the VFEPA. These state statutory definitions either

include the phrase "an agent" of the employer, see, e.g., Mich. Comp. Laws § 37.2201(a), or an equivalent phrase, such as "any person acting in the interest of an employer, directly or indirectly," see, e.g., Wash. Rev. Code § 49.60.040(3). Of these similar statutes, eleven have been construed by state appellate courts, which have split six to five in favor of holding that the agency provisions render coemployees individually liable for discriminatory acts in the workplace.[4]

¶ 18. We are not convinced by the five state-court decisions that preclude individual liability. Two of the courts, Florida and Texas, give virtually no reason for their decisions. The California, Idaho, and Tennessee courts cite the consensus of the federal courts regarding individual liability for agents under the federal FEPA as one of the main reasons for rejecting individual liability under their state workplace discrimination statutes. *Reno*, 957 P.2d at 1344-45; *Foster*, 908 P.2d at 1232-33; *Carr*, 955 S.W.2d at 835. These courts have also rejected individual liability based on the fact that their states' statutes contain small-business exceptions to the definition of "employer," much like the federal statute. Cal. Gov't Code § 12926(d); Idaho Code Ann. § 67-5902(6); Tenn. Code Ann. § 4-21-102(5). Again, that rationale cannot apply to any construction of the VFEPA, which does not contain a small-

---

[4] The cases holding that state antidiscrimination statutes allow employees to be held individually liable are *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 887 (D.C. 1998); *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 857-58 (Mich. 2005); *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 669 (Mo. 2009); *Fandrich v. Capital Ford Lincoln Mercury*, 901 P.2d 112, 115 (Mont. 1995) (this case does not address the issue in the same manner that it is addressed here, but the reasoning indicates that employees are subject to individual liability); *Genaro v. Cent. Transp., Inc.*, 703 N.E.2d 782, 785-86 (Ohio 1999); and *Brown v. Scott Paper Worldwide Co.*, 20 P.3d 921, 926 (Wash. 2001) (en banc). The cases where courts have rejected individual liability under state workplace antidiscrimination statutes are *Reno v. Baird*, 957 P.2d 1333, 1335-37 (Cal. 1998) (but suggesting that the harassment provision of the statute, which applies to "any employer" and any "person," does impose individual liability on supervisors); *Patterson v. Consumer Debt Mgmt. & Educ., Inc.*, 975 So. 2d 1290, 1292 (Fla. Dist. Ct. App. 2008); *Foster v. Shore Club Lodge, Inc.*, 908 P.2d 1228, 1233 (Idaho 1995); *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 834-35 (Tenn. 1997), *overruled on other grounds by Parker v. Warren County Utility Dist.*, 2 S.W.3d 170, 176 (Tenn. 1999) (suggesting, however, that individuals could be liable under the aiding and abetting provision of the law, which applies to "any person"); *Washington v. Robertson County*, 29 S.W.3d 466 (Tenn. 2000) (holding that individuals can be liable under the malicious harassment provision); and *Jenkins v. Guardian Indus. Corp.*, 16 S.W.3d 431, 439 (Tex. App. 2000).

business exception. Because nothing in the federal opinions supports construing the VFEPA in this manner, we are no more persuaded by this rationale when borrowed by some state courts in construing their statutes.

¶ 19. The California and Tennessee courts adopted an additional approach to the individual liability issue, which is to rely on the general rule that agents are not typically held "individually liable for acts undertaken on behalf of a disclosed principal that are within the legitimate scope of the delegated management authority." *Carr*, 955 S.W.2d at 835 (citing Restatement (Second) of Torts § 320 (1977)[5] and *Janken v. GM Hughes Elecs.*, 53 Cal. Rptr. 2d 741, 745 (1966)). Under an agency theory of discrimination liability, the supervising employee is not a party to the employer — third-party employee contract, unless otherwise explicitly agreed. Restatement (Third) of Agency § 6.01(2) (expressing the general rule of § 320 in the revised and renumbered restatement). Thus the agent is not subject to liability if the principal fails to perform obligations created by the contract, *id.* § 6.01 cmt. a, even if those obligations include protecting the employee from discrimination by that very supervisor. However, the California courts, in using this rule, were able to further rely on their statutory distinction between workplace "discrimination" and workplace "harassment," specifying that while "any person" may be liable for harassment, only "employers" are liable for discrimination. *Reno*, 957 P.2d at 1335. The *Reno* court concluded that, since discrimination claims "arise out of the performance of necessary personnel management duties" such as "hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, [and] the assignment or nonassignment of supervisory functions," the legislature properly made only the employer liable for discrimination claims. *Id.* at 1336, 1343 (quotation omitted).

¶ 20. Assuming, without deciding, that we were to apply the Restatement § 6.01(2) rule to limit the situations where employees could be individually liable under the VFEPA, § 6.01(2) does not apply to the many situations where an employee might be acting

---

[5] While the Tennessee Supreme Court decision cites the Restatement (Second) of Torts, it is plainly referring to the rule expressed by the Restatement (Second) of Agency § 320. Restatement (Second) of Agency § 320 (1958) ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.").

outside the scope of legitimate management authority. In these situations, existing case law establishes that employers are not insulated from liability under Title VII. The United States Supreme Court has unequivocally concluded that Title VII makes employers vicariously liable for many discriminatory and harassing acts of their employees that are outside the scope of employment. *Ellerth*, 524 U.S. at 758 (holding that employers are liable when the employee unlawfully discriminates beyond the scope of his or her employment, but " 'was aided in accomplishing the [discrimination] by the existence of the agency relation.' " (quoting Restatement (Second) of Agency § 219(2)(d))). We have not had occasion to consider the *Ellerth* holding in the context of a VFEPA claim, but given that the VFEPA's "standards and burdens of proof . . . are identical to those under Title VII," *Hodgdon*, 160 Vt. at 161, 624 A.2d at 1128, the expansive employer vicarious liability standard of *Ellerth* is likely to apply equally under the VFEPA. In those cases where the employee is aided in his or her discriminatory acts by the existence of the agency relation to the employer, but is acting outside the scope of his or her employment, Restatement § 6.01(2) would not bar the employee from being held individually liable for his or her actions, in addition to holding the employer vicariously liable for the same.

■■ ¶ 21. Turning to state court decisions that adopt employee liability, we find two categories of reasoning in support of our conclusion regarding individual liability under the VFEPA. First, courts have noted, as we have, that the statutory language "by its very terms, encompasses individual supervisors and managers whose conduct violates the provisions of [the nondiscrimination statute]." *Genaro*, 703 N.E.2d at 785; accord *Elezovic*, 697 N.W.2d at 858 (concluding that "if the words [of the statutory definition of 'employer'] are going to be read sensibly, [they must] mean that the Legislature intended to make the agent tantamount to the employer so that the agent unmistakably is also subject to suit along with the employer"); *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 244 (Mo. Ct. App. 2006) (holding that "the plain and unambiguous language with the definition of 'employer' . . . imposes individual liability in the event of discriminatory conduct"); *Brown*, 20 P.3d at 926 (stating "[w]e find [the statutory definition of 'employer'], by its very terms, contemplates individual supervisor liability"). Second, allowing such suits is consistent with the remedial purpose of those statutes "to deter and to eradicate

discrimination in [the state]." *Brown*, 20 P.3d at 927 (quotation omitted).[6] In sum, we conclude that by including the phrase "and any agent" in the definition of "employer," the VFEPA allows for suits against employees as individuals.

### III. Individual Liability under the Workers' Compensation Act

¶ 22. The second issue on appeal is whether the Workers' Compensation Act allows employees to be sued as individuals for discriminating against another employee who has asserted a claim for workers' compensation benefits. Although supervisor moved for summary judgment on the basis that plaintiff failed to establish a prima facie case of discrimination under the WCA, plaintiff's opposition to summary judgment raised the issue of individual liability, and the superior court granted summary judgment on the basis that the WCA does not allow employees to be sued in their individual capacities. The court did not address whether plaintiff had made a prima facie case. Accordingly, we review only the purely legal question of whether the WCA permits employees to be held individually liable and reverse summary judgment on that ground.[7]

¶ 23. Under the WCA, "[n]o person shall discharge or discriminate against an employee . . . because such employee asserted a claim for benefits." 21 V.S.A. § 710(b). We decided in

---

[6] Where the statutory definition of "employer" does not use the term "agent," but instead uses a phrase such as "any person acting directly or indirectly in the interest of an employer," state courts have reasoned that this language is "much broader in scope than that employed by the analogous Title VII provision." *Genaro*, 703 N.E.2d at 787; accord *Cooper*, 204 S.W.3d at 244. We, however, read the "any person acting in the interest of the employer" phrase as expressing essentially the same concept as the "any agent" phrase expressed in the VFEPA. See *Fandrich*, 901 P.2d at 115 (construing "agent" in the state nondiscrimination statute's definition of "employer" in "the ordinary meaning of the word 'agent,'" and thus holding that the term "includes employees who are subject to an employer's control while performing their job duties"); see also Restatement (Third) of Agency § 1.01. Consequently, we do not find this last rationale to be a convincing reason to read the "agent" term in the VFEPA's definition of "employer" more narrowly than these state courts have read the definition of "employer" in their workplace antidiscrimination statutes.

[7] As with the VFEPA claims, defendant urges us to affirm the trial court's order on a separate ground, namely, that plaintiff failed to make a prima facie case for discrimination under the WCA. Again, acknowledging we have the discretion to address issues not decided by the trial court, *Towns*, 2008 VT 98, ¶ 16 n.4, we decline to do so here.

*Murray v. St. Michael's College*, 164 Vt. 205, 209-10, 667 A.2d 294, 298-99 (1995), that this statutory section provides a private right of action for damages. However, as with the VFEPA, whether the statutory term "person" means that employees and supervisors, as well as employers, may be held personally liable for workers' compensation discrimination has not before been addressed.

¶ 24. As we have already stated, the starting point for statutory interpretation is to give effect to legislative intent. We first look to the language of the statute and seek to construe it according to its plain and ordinary meaning. *State v. LeBlanc*, 171 Vt. 88, 91, 759 A.2d 991, 993 (2000). Where the language is clear and unambiguous, we enforce the statute according to its terms. *Id.* As the term "person" is not defined in the WCA, we are obliged to interpret the term consistently with the rules set out in Title 1, chapter 3. 1 V.S.A. § 101. Chapter 3 defines "person" as including "any natural person." *Id.* § 128. Accordingly, we find no ambiguity in the meaning of "person" in this statute, and we see no reason to second-guess what the Legislature meant by its use of the term.[8] The statute allows an employee to be sued as an individual — which is consistent with the Legislature's approach to personal liability for violation of the VFEPA.

¶ 25. The superior court, in reaching the opposite conclusion, stated that "[i]f the Legislature wanted to create a private right of action against supervisors, it could easily have done so clearly and directly." It is not apparent, however, why the Legislature need be more clear than to use the term "person" in its most plain and all-encompassing sense. This legislative language choice straightforwardly applies the nondiscrimination provision to co-workers as well as to employers. As plaintiff points out, the Legislature used the term "employer" throughout the WCA to specify liability and responsibilities of employers for work-related injuries. Its decision to use the term "person" in § 710(b) instead of "employer" marks a clear departure from its approach to employer-only liability in the rest of the WCA. Rather than ignore this distinction and assume the Legislature meant what it did not say, we will interpret the statute according to its plain meaning.

---

[8] We acknowledge receipt of plaintiff's supplemental citation to a transcript purportedly relevant to the statute's underlying legislative history, but note that we did not consult or rely on this material in any respect in reaching our decision.

¶ 26. Supervisor argues that it undermines the overall structure and purpose of the WCA to interpret the nondiscrimination provision as applying to individuals. The WCA "represents a public policy compromise in which the employee gives up the right to sue the employer in tort in return for which the employer assumes strict liability and the obligation to provide a speedy and certain remedy for work-related injuries." *Murray*, 164 Vt. at 209, 667 A.2d at 298 (quotation omitted). Prohibiting coworkers from discriminating against those who file workers' compensation claims has no bearing on this original compromise. Statutory authorization for employees to sue other employees for discrimination exposes employers to no greater risk of suit or liability than an employer could expect from suits against employers alone based on statutory or vicarious liability for discrimination by employees or supervisors. Nor does this construction interfere with injured workers securing the speedy and certain compensation intended by the enactment. The legislative choice to expose coemployees to discrimination liability is consistent with preventing workplace cultures that discourage employees from obtaining compensation to which they are entitled. Our reading of § 710(b) is fully consistent with the WCA as a whole.

¶ 27. Supervisor cites case law from Texas, Illinois, and Kansas in support of construing Vermont's WCA to exclude employees from personal liability for violating the antidiscrimination clauses of the Act. However, those cases rely on reasoning we have already rejected as inapposite or unpersuasive. Particularly unconvincing is a Texas court's overly stingy reading of the term "person" to exclude "*any* person." *Stewart v. Littlefield*, 982 S.W.2d 133, 136-37 (Tex. Ct. App. 1998) (quoting with approval *Stoker v. Furr's, Inc.*, 813 S.W.2d 719, 723 (Tex. Ct. App. 1991), which concluded that it was inconceivable that the Legislature would have intended "person" to mean "any person," and "[h]ad the legislature intended to create a cause of action against any person . . . , it could have easily said so"). As stated above, we are content to interpret the statutory term "person" as it is defined by statute, rather than as meaning "employer" — a term eschewed by the Legislature.

¶ 28. Supervisor next directs us to some courts that have limited potential defendants in common-law retaliatory-discharge suits to employers alone. The basis for this limit is that "only the employer . . . has a 'motive' to fire an employee for seeking

workers' compensation benefits." *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 570 (Ill. 1998). While this is likely true, it fails to acknowledge that Vermont's statutory provision is clearly aimed at any form of discrimination, not simply discharges. Further, it is reasonable to understand that the Legislature, in enacting 21 V.S.A. § 710(b), was as concerned with ensuring employees' access to workers' compensation benefits without fear of reprisal, in any form, as it was with removing employers' economic incentives to retaliate by discharging those employees who file claims. From the employee-protection perspective, the Legislature had good reason to prohibit fellow employees, not just employers, from creating hostile work environments for those who file workers' compensation claims. In sum, none of the authority offered by supervisor is persuasive on this point, and we reverse summary judgment on plaintiff's WCA claim.

*Reversed and remanded for further proceedings not inconsistent with this opinion.*