2010 VT 36

# James Nichols, Kirk Wool and All Other Vermont Inmates Similarly Situated v. Robert Hofmann, Commissioner of Corrections

[998 A.2d 1040]

No. 08-510

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed April 30, 2010

*Matthew F. Valerio*, Defender General, and *Dawn Seibert*, Prisoners' Rights Office, Montpelier, for Plaintiff-Appellant Nichols.

*William H. Sorrell*, Attorney General, and *Jon Jeffrey Tyzbir*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiffs, prison inmates housed at the Lee Adjustment Center, a privately operated prison in Beattyville, Kentucky, appeal the dismissal of their petition for injunctive relief seeking both the right to use debit cards for telephone calls and the availability of free postage stamps. We reverse and remand.

¶ 2. Plaintiffs were convicted and sentenced in Vermont and then transferred to the Kentucky prison pursuant to a contract be-

tween the Vermont Department of Corrections (DOC) and the Corrections Corporation of America (CCA), the company that manages the prison. Since plaintiffs' arrival at the prison, CCA has not permitted them access to debit calling cards to place telephone calls, instead requiring them to make collect calls. This restriction has caused hardship on plaintiffs due to the comparatively high cost of collect calls, as well as the circumstance that some of their family members possess only cell phones, which are not able to receive collect calls. Furthermore, CCA has refused to provide free postage stamps to inmates, a benefit enjoyed by all inmates housed in Vermont pursuant to DOC policy.

¶ 3. In December 2007, plaintiffs filed a petition for injunctive relief, seeking access to debit calling cards under 28 V.S.A. § 802a(c) and free postage stamps pursuant to a stipulation entered into by DOC in 1981 in a federal court case. The State filed a motion to dismiss under Vermont Rule of Civil Procedure 12(b)(6) in June 2008, contending that plaintiffs' claims failed as a matter of law. The court granted the State's motion, concluding that this Court's decision in *Daye v. State*, 171 Vt. 475, 769 A.2d 630 (2000), precluded the relief sought by plaintiffs. Plaintiffs filed a timely appeal.

¶ 4. We review the trial court's disposition of the motion to dismiss de novo, *Girouard v. Hofmann*, 2009 VT 66, ¶ 6, 186 Vt. 153, 981 A.2d 419, taking all facts alleged by plaintiffs as true, *Amiot v. Ames*, 166 Vt. 288, 291, 693 A.2d 675, 677 (1997). To maintain open access to the courts and to implement our preference for dispositions on the merits, courts should view Rule 12(b)(6) motions with disfavor and rarely grant them. *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575, 959 A.2d 990 (mem.); *Endres v. Endres*, 2006 VT 108, ¶ 4, 180 Vt. 640, 912 A.2d 975 (mem.). A court should therefore grant a Rule 12(b)(6) motion only if "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Richards v. Town of Norwich*, 169 Vt. 44, 48, 726 A.2d 81, 85 (1999) (quotation omitted).

¶ 5. Plaintiffs first contend that CCA's refusal to allow access to debit calling cards violates 28 V.S.A. § 802a(c), which provides in relevant part: "When an inmate requests and receives a list of parties approved to receive telephone calls, the inmate shall be provided the option of using a debit or collect call system to place such calls." The trial court answered this argument primarily by holding that the statute gives DOC, not the inmate, the choice of

method of paying for telephone calls. In addition, the trial court adopted the State's assertion that the statute by its terms applied only to inmates incarcerated in Vermont and not to inmates transferred out of state. Relying upon our decision in *Daye*, the court held that instead of applying § 802a(c) we should resolve this issue by relying upon the policies underlying the Interstate Corrections Compact, and that these policies require only that plaintiffs be treated similarly to the other inmates housed at the Lee Adjustment Center.

¶ 6. The argument that § 802a(c) applies only to prisons located in Vermont fails because it relies upon an overly narrow reading of the statutory language. Section 802a(c) applies to "inmates," a term defined in relevant part as "any person . . . committed to the custody of the commissioner pursuant to the law of the state and subsequently committed to a *correctional facility*." 28 V.S.A. § 3(5) (emphasis added). The term "correctional facility" is in turn defined as "any building . . . of or supported by the department and used for the confinement of persons committed to the custody of the commissioner." *Id.* § 3(3). In the State's view, § 802a(c) does not apply because the privately operated Kentucky prison is not a facility "of or supported by" DOC and is thus not a "correctional facility." Following this argument to its logical conclusion, plaintiffs, therefore, are not "inmates" and thus fall outside the scope of § 802a(c). We are not persuaded by this argument.

¶ 7. When interpreting a statute, we first rely upon the plain language of the law as a means of determining legislative intent. *Delta Psi Fraternity v. City of Burlington*, 2008 VT 129, ¶ 7, 185 Vt. 129, 969 A.2d 54. "If that plain language resolves the conflict without doing violence to the legislative scheme, there is no need to go further . . . ." *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986). Here, the plain language of the definition of "correctional facility" demonstrates that it encompasses out-of-state private prisons that house offenders under DOC custody. Even if the Lee Adjustment Center is not a facility "of" DOC, it plainly is "supported by" DOC. According to an affidavit from plaintiff Kirk Wool, the prison currently houses over 500 inmates from Vermont.[1] Those inmates fill more than sixty

---

[1] Although this case was submitted and decided on a motion to dismiss, all parties have alleged facts, and conclusions based on facts, on which they sought a decision in the trial court and in this Court. In fact, the State filed the motion to dismiss

percent of the 816 beds at the prison. See CCC Facilities: Lee Adjustment Center, http://www.correctionscorp.com/facility/lee-adjustment-center (listing the number of beds as 816). In return for housing these prisoners, the state compensates CCA at a daily rate that, according to a 2004 article, is $42.50 per prisoner. D. Yetter & M. Pitsch, *Prison Riot Followed Increase in Inmates*, Courier-Journal (Louisville, Ky.), Sept. 17, 2004, at A1, available at 2004 WLNR 22883843. Thus, based on the 2004 cost per prisoner, and assuming a relatively stable prisoner population, this amounts to around $8,000,000 in revenue per year.[2] These figures plainly indicate that the Lee Adjustment Center derives considerable income from CCA's contract with the state. These figures show the extent of support, although they are not central to our decision. The important point is that DOC pays to house inmates at Lee Adjustment Center, and that is support as contemplated in § 3(3) such that Lee Adjustment Center is a "correctional facility" for purposes of the governing Vermont statutes.

¶ 8. Given our conclusion that § 802a(c) applies to inmates in the private, out-of-state facility in this case, it is not appropriate to apply the Interstate Corrections Compact to plaintiffs' claim, as the State urges us to do. We note as a preliminary matter, and the State concedes, that the Compact by its terms does not apply

---

and then argued that facts alleged by plaintiffs were speculation and were unsupported, stating that "[u]nsupported commentary is not record evidence and should be afforded no weight." The conduct of the parties demonstrates that submission on a motion to dismiss was wholly inappropriate in this case. Nevertheless, it appears from the briefing and the oral arguments that the basic facts underlying the complaint and the motion are undisputed. For the limited purpose of explaining the undisputed facts, we have drawn on information from publicly available sources in writing this decision.

[2] This is a conservative estimate since it is based on 2004 numbers. According to more recent figures, on average, 637 Vermont inmates were housed in privately operated prisons on any given day in fiscal year 2009. Vermont Department of Corrections, Facts and Figures FY 2009, at 188, available at http://www.doc.state.vt.us/about/reports/ff2008_adobe/view. This resulted in expenditures by the state of approximately $15,114,847, or $23,728 per inmate, for fiscal year 2009. *Id.* Given that more than 500 of those 637 inmates are apparently housed at the Lee Adjustment Center, that prison presumably receives the vast majority of the more than fifteen million dollars spent by Vermont on housing out-of-state prisoners.

to contracts with privately operated prisons.[3] The Compact, codified at 28 V.S.A. §§ 1601-1621, governs contracts between states "for the confinement of inmates on behalf of a sending state in institutions situated within receiving states." 28 V.S.A. § 1603(a); see also *Daye*, 171 Vt. at 479, 769 A.2d at 633-34 (concluding that state contract with county in New Jersey to transfer inmates was entered into pursuant to DOC Commissioner's broad authorization "to designate the place of confinement where the sentence shall be served" under 28 V.S.A. § 701(b) and not pursuant to Compact); *Slater v. McKinna*, 997 P.2d 1196, 1198-99 (Colo. 2000) (holding that Compact does not apply to privately operated prisons).[4] Therefore, claims raised by inmates transferred pursuant to the state's contract with CCA fall outside the scope of the Compact. Apparently the State's concession was not transmitted to the trial court, because that court rejected plaintiffs' argument that the Compact does not apply.

¶ 9. The State contends that although the Compact does not expressly apply to privately operated prisons, this Court should nonetheless apply the compact by analogy. In particular, the State directs this Court's attention to a Compact provision stating that inmates transferred out-of-state "shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution." 28 V.S.A. § 1604(e). We decline to adopt the State's position. Plaintiffs rely upon a specific statutory right contained in 28 V.S.A. § 802a(c). We cannot understand what theory would allow us to deny a statutory right based on an inapplicable interstate compact applied by analogy. The controlling law is the statute and not the Compact.

¶ 10. The State nevertheless argues that we should apply the policies set forth in the Compact because it would be unreasonable

---

[3] It is fair to say that at oral argument the lawyer for DOC made this concession begrudgingly when pressed and then went back to arguments that suggested that the Compact does apply. DOC's brief states that "DOC has steadfastly maintained that [plaintiffs] were not transferred pursuant to the ICC." Overall, DOC's position is best characterized by the statement at oral argument that "we would argue that the ICC applies by analogy."

[4] We do not dismiss the possibility that an inmate could be incarcerated in a private facility in the receiving state at least in part pursuant to a contract between the states. DOC has made no showing of such an arrangement here. Its concession that the Compact does not apply is an indication that no such contract exists.

to run the correctional system in any other way. The short answer to these arguments is that "policy arguments, however persuasive, cannot prevail if there is conflict with the statutes." *In re Allied Power & Light Co.*, 132 Vt. 354, 361, 321 A.2d 7, 11 (1974). Even if this were not the answer, we are faced with conflicting policy arguments that are not for us to resolve. Plaintiffs argue that it is unreasonable to make them communicate with family members and others solely through collect calls because some will refuse collect calls and many have only cell phones that will not accept collect calls. The State contends in its brief that "the strong public policy encouraging interstate inmate transfer would best be served if inmates were subject to the policies of the receiving state [only]." Applying the policies of a sending state to a prison in the receiving state, the State argues, would tremendously burden such receiving facilities by forcing them to learn and apply the policies of the sending state, which would "improperly thwart the efficiencies contemplated by interstate transfer" and make such prisons less willing to accept inmates from other states. The State argues that treating all inmates housed in one facility the same is critical to maintaining prison morale and efficient prison administration. Beyond noting that DOC's policy arguments appear out of place in a situation where DOC is supplying the majority of the prisoners in a private prison, we leave these arguments to the Legislature.

¶ 11. Finally on this point, DOC argues, and the trial court seems to have accepted, that our decision in *Daye* holds that the policy in the Compact, 28 V.S.A. § 1604(e), applies even if the Compact does not technically apply. We cannot read *Daye* to support that argument. *Daye* involved a suit by members of an organization that advocates for Vermont prisoners, arguing that the State had unlawfully transferred custody of inmates to county facilities in one state and state facilities in another. With respect to the county facilities, the main argument was that the Compact did not apply and that, as a result, DOC had no power to transfer Vermont inmates to the out-of-state county facility. We rejected that argument, holding that DOC could transfer inmates under the general statutory powers of the Commissioner. *Daye*, 171 Vt. at 479, 769 A.2d at 633-34. The rest of the decision involved the construction of the Compact because it applied to the prisoners transferred to Virginia. The plaintiffs argued that under the Compact the facility policy of limiting visitors to one adult at a time was unlawful because inmates housed in Vermont were not so

limited. We held that the Compact did not require that the policies of the sending state, with respect to issues like visitation, be applied in the receiving state. *Id.* at 482, 769 A.2d at 636. That holding is exclusively a construction of the Compact and does not suggest that Compact provisions shall be enforced even when the Compact is not applicable.[5]

¶ 12. We hold that § 802a(c) does apply to plaintiffs, even though they are housed in an out-of-state private correctional facility. Thus, we address the second issue, whether § 802a(c) gives plaintiffs the right they seek — that is, access to debit calling cards. The plain language of the statute conclusively indicates that it does. Subsection 802a(c) states that "[w]hen an inmate requests and receives a list of parties approved to receive telephone calls, the inmate shall be provided the option of using a debit or collect call system to place such calls." The trial court read the statute as giving control of the payment option to DOC. We cannot agree. The language makes clear that the *inmate* is provided the choice and that the choice is between "a debit or collect call system." *Id.* Any inmate who falls within the scope of § 802a(c) must therefore be given the choice of using a debit calling card or calling collect. It is telling that DOC has not defended the trial court's construction of the statute in this Court and appears to have conceded the point in its motion to dismiss, stating that "under section 802a, Vermont inmates have the option to purchase debits cards with their own funds."

¶ 13. We conclude that plaintiffs have the statutory right to use debit cards for telephone calls when housed in an out-of-state private correctional facility not pursuant to the Compact. It follows that the trial court erred in granting DOC's motion to dismiss. On remand, the trial court must determine whether the right was violated and what remedy to impose, if any.

---

[5] The confusion about the reach of *Daye* may arise because the plaintiffs in that case argued that the visitation policies in both the county and the state facilities were unlawful "in violation of the Compact." 171 Vt. at 477, 769 A.2d at 632. Despite the fact that the Compact did not apply to the county transfers, the analysis exclusively involved provisions of the Compact and decisions from other jurisdictions involving the Compact because the plaintiffs argued from the Compact. To the extent that *Daye* can be read to state that provisions of the Compact or its policies apply in situations where the Compact is inapplicable, whether directly or by analogy, that reading is incorrect.

¶ 14. Plaintiffs next contend that DOC's refusal to provide them with free postage stamps violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. On May 4, 1981, in the United States District Court case of *Pregent v. State*, No. 80-56 (D. Vt.), the parties entered into a stipulation of settlement that provided that "[t]he Department of Corrections shall promulgate a state-wide policy which provides each inmate a maximum of seven (7) free stamps a week."[6] Pursuant to this stipulation, DOC provides free stamps to inmates housed in Vermont. However, DOC has not provided free stamps to Vermont inmates housed in out-of-state facilities. Plaintiffs argue that the Equal Protection Clause requires DOC to treat them similarly to inmates incarcerated in Vermont and that DOC lacks any rational basis for failing to do so.

¶ 15. At the outset, we note that the trial court granted the motion to dismiss with respect to this claim based on its reading of *Daye*. We find nothing in that decision that resolves the equal protection issue in this case. The plaintiffs never made an equal protection claim in *Daye*.

¶ 16. The Equal Protection Clause demands that states treat similarly situated people alike, unless they have a rational basis for treating them differently. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602, 128 S. Ct. 2146, 2153 (2008); *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Plaintiffs allege that DOC refuses to provide free stamps to Vermont inmates housed at the Lee Adjustment Center and therefore treats them differently than similarly situated persons — that is, Vermont inmates housed in Vermont. The State concedes that it does not provide free stamps to plaintiffs, but contends that plaintiffs are not situated similarly to inmates housed in Vermont. Rather, the State argues, plaintiffs should be compared to the other inmates housed at the Lee Adjustment Center. Some cases from other jurisdictions support the view that plaintiffs are similarly situated with in-state Vermont inmates; others support the opposing view advanced by DOC. Compare, e.g., *Bishop v. Moran*, 676 F. Supp. 416, 421 (D.R.I. 1987) ("[T]he mere fact that

---

[6] Plaintiffs have not claimed, either in the trial court or in this Court, that they can enforce the stipulation in this action. Their claim is entirely that DOC's conduct in honoring the stipulation for in-state inmates, but not for them as out-of-state inmates, denies them equal protection of the law.

an inmate is being housed in a different facility does not mean that he is no longer a [sending] state prisoner subject to the jurisdiction of the [sending state's] Department of Corrections along with in-state prisoners."), with *Tucker v. Angelone*, 954 F. Supp. 134, 136 (E.D. Va. 1997) ("For equal protection purposes, inmates transferred pursuant to the Interstate Corrections Compact are similarly situated to those inmates in the receiving institution." (quotation omitted)).

¶ 17. Equal protection "does not just mean treating identically situated persons identically." *Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995). The issue is whether the groups involved are similar in relevant aspects. *Thomas v. City of W. Haven*, 734 A.2d 535, 545 (Conn. 1999). There must be "some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified." *People v. Nguyen*, 63 Cal. Rptr. 2d 173, 178 (Ct. App. 1997).

¶ 18. Here, DOC wants us to rule that plaintiffs are not similarly situated with in-state inmates solely on the basis that they are housed out of state. We conclude that this fact, alone, does not show that plaintiffs are not situated similarly with in-state inmates for purposes of an entitlement to stamps. Indeed, on the surface, the fact that the plaintiffs are housed out of state would appear to increase the need for the ability to communicate with family and others that the stamps provide. We reiterate that we have no facts on which to base a ruling, other than the general ones provided above, which can be used only to demonstrate the context for the issues. We do not have the contract between DOC and CCA, and we do not know the barriers to supplying the stamps. We do not know what other inmates are at the Lee Adjustment Center and the rights and privileges of these inmates. For all that appears in this record, other inmates at the Center could be provided with free stamps, while the Vermont inmates are denied those stamps.

¶ 19. The inadequacy of the record becomes even more apparent when we reach DOC's argument that there is a rational basis for any discrimination between in-state and out-of-state inmates. For this argument, DOC repeats its claim with respect to the telephone charging issue: the policies of the receiving state should control, it is onerous to have different policies on communication

for different inmates, and having different policies for different inmates on the availability of stamps would undermine inmate morale. Each of these claims requires factual support, and DOC has provided none because it filed a motion to dismiss that cannot go outside the facts alleged by plaintiffs. The trial court acted prematurely in dismissing plaintiffs' equal protection claim with respect to stamps.

*Reversed and remanded for proceedings consistent with this opinion.*