*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2015-028

JUNE TERM, 2015

| | |
|---|---|
| In re L.W., D.M.S., R.S., & A.S., Juveniles } | APPEALED FROM: |
| } | |
| } | Superior Court, Caledonia Unit, |
| } | Family Division |
| } | |
| } | DOCKET NO. 91/92/93/94-10-13/14 |

Trial Judge: Howard A. Kalfus,
Acting Superior Court Judge

In the above-entitled cause, the Clerk will enter:

Mother and father appeal the termination of their parental rights to D.M.S., R.S., and A.S., born in June 2007, June 2008, and July 2010. Mother also appeals termination of her parental rights to L.W., born in August 2005.[1] On appeal, mother argues that the court erred in failing to address whether there was a change in circumstances, that this failure violated mother's due-process and equal-protection rights, and that the court's best-interests findings were not supported by credible evidence. Father joins mother's arguments, and also argues that the court failed to consider his parental fitness individually. We affirm.

In October 2013, a petition was filed to have all four children adjudicated children in need of care or supervision (CHINS). Prior petitions involving some or all of the children were filed in 2007 and 2012. Some of the issues prompting the involvement of the Department for Children and Families (DCF) have been chronic filth in the home, parents' substance abuse, and the children's truancy and poor hygiene. Both parents have had mental-health issues and father has anger-management issues.

When the CHINS petition was filed in October 2013, the court initially placed the children under a conditional custody order. A week later, the court transferred temporary custody to DCF. In January 2014, the parents stipulated that all four children were CHINS due to lack of proper parental care. The stipulation stated that the children had "displayed unsafe and dysregulated behavior due to lack of consistent supervision and services while in the custody of their [parents]," putting the children at risk of harm.

In February 2014, DCF filed an initial recommended disposition case plan with a concurrent case-plan goal of reunification and adoption. The parents contested the disposition plan, and the matter was set for an evidentiary hearing. Then, after an internal six-month administrative review was held in March, DCF filed an amended recommended disposition plan with a goal of termination, and filed petitions to terminate parental rights. The termination

---

[1] L.W.'s father voluntarily relinquished his parental rights.

hearing was held over four days in September and October 2014. In January 2015, the court granted the petitions. In a written order, the court found that termination was in the children's best interests based on the following findings. The children are adjusted well in their respective homes, schools, and communities. They have engaging academic and extra-curricular activities. They are enjoying good loving relationships with their foster families and foster siblings. Parents were inconsistent in their care for the children. Parents love the children, but there is no likelihood that parents will be able to resume parental duties within a reasonable period of time. Despite a seven-year history of interventions by DCF, school personnel, and counselors, parents have issues regarding maintaining a clean and safe home and meeting the children's educational needs. Both parents have a history of drug use, and mother continues to use marijuana regularly. Mother has mental-health issues. Further, parents do not play a constructive role in the children's lives. They were inconsistent in attending visits and did not attend medical appointments or school meetings. Both parents filed notices of appeal.

Mother first argues that the trial court erred by failing to consider whether there was a change in circumstances prior to considering the children's best interests. We conclude that there is no merit to this argument because termination was sought at initial disposition and therefore there was no existing disposition that required modification by demonstrating a change of circumstances.

Pursuant to statute, the family court is authorized to terminate parental rights either at the initial disposition proceeding or at a subsequent stage of the proceeding through modification of an existing disposition order. In re D.C., 2012 VT 108, ¶ 14, 193 Vt. 101. When termination of parental rights is sought at the initial disposition proceeding, the statute requires the court to consider whether termination is in the child's best interests. In re J.T., 166 Vt. 173, 177, 179 (1997); see 33 V.S.A. § 5114(a) (listing best-interests factors to be considered when termination is sought); id. § 5318(a)(5) (listing termination of parental rights as option at disposition). In contrast, when there is an existing disposition order, parental rights may be terminated only after the court first determines that there has been a change of circumstances and termination is in the child's best interests. See 33 V.S.A. § 5318(d) (final disposition order may be modified pursuant to § 5113); id. § 5113(b) (modification may be made "on the grounds that a change in circumstances requires such action to serve the best interests of the child").

Here, the court was not required to consider whether there was a change in circumstances because termination was sought at initial disposition. In arguing that a change-of-circumstances finding was necessary, mother appears to rely on the fact that DCF filed an initial disposition case plan with concurrent goals of reunification or adoption and subsequently filed an amended case plan with a sole goal of adoption. That DCF filed an initial disposition case plan and then modified that recommended case plan does not change the fact there was not an existing disposition order, and therefore the court was not required to find a change of circumstances to amend an order that did not exist. The initial recommended plan was discussed at a status conference on February 13, 2014, but it was contested by the parties and not considered or accepted by the court.

Mother next argues that the court violated her rights to due process and equal protection by failing to consider whether there was a change of circumstances. In support of her due-process argument, mother contends that the change-of-circumstances finding is an essential component of the statutory procedure and eliminating it denies her due process. There was no denial of due process here. The court's process was entirely consistent with the statutory

2

requirements. Because there was no prior disposition order, the statute did not require a change-of-circumstances finding. Further, insofar as mother contends that the process here was insufficient because it did not require the court to make a finding of parental unfitness, we recently held that the statutory best-interests factors "encompass both directly and indirectly the question of parental fitness" and therefore afford sufficient process. D.C., 2012 VT 108, ¶ 22.

There is also no merit to mother's argument that she was denied equal protection because she was treated differently from other parents. To trigger an equal-protection analysis, mother must demonstrate that she "was treated differently as a member of one class from treatment of members of another class similarly situated." State v. George, 157 Vt. 580, 585 (1991) (emphasis added). Mother has failed to show that she was treated differently from other similarly situated parents because of membership in a particular class. She was treated the same as all other parents whose parental rights the State seeks to terminate at initial disposition. To the extent she was treated differently from parents whose rights were terminated by modifying a prior disposition order, mother was not similarly situated to those parents. Further, the distinction between these two groups of parents is totally reasonable insofar as when there is no existing disposition order, there is no baseline from which to demonstrate a change. See Nichols v. Hofmann, 2010 VT 36, ¶ 16, 188 Vt. 1 ("The Equal Protection Clause demands that states treat similarly situated people alike, unless they have a rational basis for treating them differently.").

Next, mother argues that the court's best-interests analysis was not supported by relevant or admissible evidence. In assessing the child's best interests, the court must consider the statutory criteria. 33 V.S.A. § 5114(a). "The likelihood that the parent will be able to resume or assume parental duties within a reasonable period of time," id. § 5114(a)(3), is "[t]he most important factor." In re J.B., 167 Vt. 637, 639 (1998) (mem.). On appeal, we will uphold the family court's conclusions if supported by the findings of fact, and will let the findings of fact stand unless clearly erroneous. In re A.F., 160 Vt. 175, 178 (1993).

Mother fails to demonstrate that the court's best-interests analysis is not supported by the evidence. The court found that although parents love their children, they have had inconsistent involvement in the children's lives and do not play a constructive role. Most importantly, the court found that parents would not be able to resume parental duties within a reasonable period of time. The court based these decisions on the following findings. Although father reported that he last used drugs in 2010, he stopped attending therapy sessions in May 2014. Father also stopped therapy for his anger-management issues. Mother has mental-health issues, including anxiety disorder, depression, post-traumatic stress disorder and substance-abuse disorder, and these issues impact her ability to parent. Parents lack the necessary parenting skills to maintain a clean and safe environment. The home was chronically dirty and cluttered, and the children were sent to school without proper hygiene. The children were hungry and parents refused help from the school. Parents distrusted school officials and did not attend meetings for a child's individualized education plan, or follow up on therapy for L.W., who was parentified, left to care for and prepare meals for her younger siblings. Parents' attendance at family-time coaching was inconsistent, and parents did not attend shared parenting meetings. Parents did not attend their children's medical appointments or school meetings.

Mother does not challenge any of these findings. Instead, she lists evidence submitted at the hearing that she claims demonstrates she will be ready to resume parental duties within a reasonable period of time. To the extent mother disagrees with the court's assessment of the

3

evidence, this is insufficient to demonstrate error. We reiterate that our role on appeal is limited to determining if the findings are supported by credible evidence; it is exclusively the role of the family court, not this Court, to determine the credibility of the witnesses and weigh the evidence. A.F., 160 Vt. at 178. Because the court's findings are supported by evidence in the record, there are no grounds to disturb them on appeal.

Mother makes two additional claims. First, she faults the court for failing to consider whether she could parent fewer than all of the children. There was no error. Mother did not present this as an alternative argument to the trial court. She sought reunification with all of the children. Moreover, the court considered the evidence as it particularly related to each child individually and found that termination was in each child's best interests. Mother also contends that the court erred in using historical data, rather than considering her prospective parenting ability. There was no error. The court considered the family's history to the extent it explained the reasons that required DCF intervention and removal of the children from parents' care. The court did not, however, limit itself to considering parents' past failings, but considered parents' evidence on their current ability to care for the children. On the basis of all of this evidence the court concluded that parents would not be able to resume parental duties within a reasonable period of time.

Father argues that the court erred in not considering his parental fitness individually. According to father, he indicated he was able to be a sole parent and there was evidence tending to show that he had adequate parenting skills, including testimony of the family-time coach that father did a lot of parenting, and the DCF caseworker that father played with the children during visits.

Although father asserts that it "was quite clear that he was ready, willing and able to parent [the children] as a sole parent," the record does not reflect such clarity. He produced no evidence to support such a claim to the trial court. Early on the proceedings, the court questioned father on whether he was proposing to co-parent with mother or on his own. In response, father was unsure. At the final hearing, father testified that although he did not live in the same home with mother and the children for financial reasons, he was there every day, and spent nights there. Father testified that he wanted all the children returned to parents' care and that he wanted to parent with mother, and believed that she was a good parent. Therefore, father failed to present himself as seeking to parent individually without mother.

In any event, the court did make specific findings on the children's best interests as related particularly to each parent, and found that father did not play a constructive role in the children's lives and would not be able to resume parental duties within a reasonable period of time because he had not addressed the reasons for DCF involvement in the home. Concerns existed around father's substance-abuse and anger issues. Although father reported that he was no longer using drugs, he had stopped therapy to address both his drug addiction and his anger problems. Removal was also caused by the condition of the home, which was not safe or clean, and around the children's lack of hygiene and adequate supervision. Father did not address these parenting concerns; he had inconsistent attendance at family-time coaching and stopped attending shared-parenting meetings. Further, he did not play a constructive role in the children's lives. He did not attend the children's medical appointments or school meetings. His visits with the children were inconsistent; he ceased calling A.S. and R.S. in their foster home in September 2014, and his last contact with D.M.S. was in June 2014. This evidence supports the

4

court's findings, which in turn support the court's decision that termination of father's rights was in the children's best interests.

      <u>Affirmed</u>.

BY THE COURT:


_____

Paul L. Reiber, Chief Justice


_____

Marilyn S. Skoglund, Associate Justice


_____

Beth Robinson, Associate Justice
