Filed 04/30/21


VERMONT SUPERIOR COURT

Washington Unit
65 State Street
Montpelier VT  05602
802-828-2091
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 554-10-19 Wncv

Butler vs. Touchette

# ENTRY REGARDING MOTION

Title:        Cross Motion for Summary Judgment Dft's cross-motion for summary judgment.
(Motion: 7)
Filer:        Robert C. Menzel
Filed Date:   November 06, 2020

The motion is GRANTED.

Plaintiff Brian Butler is a Vermont inmate currently serving his sentence in a contract prison in Mississippi owned by CoreCivic.  In his *pro se* complaint, Mr. Butler challenges the selection of material in the prison law library, namely an alleged lack of materials related to Mississippi state law and CoreCivic policies.  As presented by his counsel, Mr. Butler's claim is that the lack of these materials violates his rights under Vermont's Common Benefits Clause.  He does not assert any claim based on an inability to constitutionally access the courts.  Mr. Butler is represented by Annie Manhardt, Esq.  The State is represented by Robert Menzel, Esq.  Both Mr. Butler and the State have filed motions for summary judgment.[1]  The material facts are not genuinely disputed.

Despite the lack of an access-to-courts claim, Mr. Butler argues, in essence, that the harm to him is that the lack of the Mississippi resources he would like could inhibit his ability to seek legal redress for

---

[1] Nominally, Mr. Butler sued the Vermont Department of Corrections and Michael Touchette, then-Commissioner, in his official capacity only.  Agencies of the State, for most litigation purposes, are no different than the State itself.  State officials in official capacity are simply the State.  See *Lewis v. Clarke*, 137 S.Ct. 1285, 1290–91 (2017); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official."); *Karcher v. May*, 484 U.S. 72, 78 (1987) ("We have repeatedly recognized that the real party in interest in an official-capacity suit is the entity represented and not the individual officeholder."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  It is not a suit against the official personally, for the real party in interest is the entity." (citation omitted)).

Entry Regarding Motion
554-10-19 Wncv Butler vs. Touchette

Page **1** of **6**

hypothetical future legal claims. There is no Vermont statute guaranteeing him these legal resources. He refers for general policy guidance, however, to DOC Directive #385, which addresses the subject of inmate access to courts.[2]

Directive #385 is the core expression of Vermont DOC policy regarding inmate access to courts. The policy explicitly states, "This policy shall only apply to claims challenging sentences, directly or collaterally, or the conditions of their confinement." The actual terms of the policy flesh out its scope:

> DOC shall ensure that inmates are provided with meaningful access to courts consistent with legitimate penological objectives. All inmates shall be given adequate opportunity to prepare and file legal papers to attack sentences, directly or collaterally; challenge the conditions of confinement; and initiate habeas corpus proceedings, direct appeal, constitutional rights actions and other civil rights actions related to incarceration.

The directive itself says little concrete as to what legal resources will be provided to inmates, but the record is that inmates, whether in Vermont or Mississippi, have access to Vermont-related legal materials including statutes, rules, cases, and administrative law as well as federal materials including USCS, federal case law on a national basis, federal court rules as well as other miscellaneous materials.

Mr. Butler claims that he does not have access to the Mississippi analogs of the Vermont materials or CoreCivic policies. He grieved that and other matters. Ultimately, while some other issues were found meritorious, and presumably have been corrected, the Commissioner refused to provide the legal resources Mr. Butler seeks.

The DOC employs a person to serve as Legal Education Director (LED) who acts as a liaison for inmates' legal questions and grievances related to access to courts. She works with inmates to ensure that they have the tools necessary to prepare and file permissible claims. Mr. Butler has not contacted the LED with regard to any need for Mississippi state law or CoreCivic policies.

*Standing/Access to the Courts*

---

[2] Directive 385 does not purport to guarantee any inmates access to the specific resources that Mr. Butler seeks. It merely establishes high-level policy on issues related to inmate access to the courts.

The State argues that Mr. Butler lacks constitutional standing in this case for lack of any cognizable injury. As the State argues, the fundamental right of access to courts imparts no "abstract, freestanding right to a law library or legal assistance[;] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). As the *Lewis* Court explained, "the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id*. The right is to access, not any particular mechanism that facilitates access. Thus, there is no access-to-courts claim without an actual injury, such as a dismissed case. There is no such actual injury in this case, but that is a moot point because no access-to-courts claim has been asserted.

To the extent that the State intended is standing argument to somehow extend to Mr. Butler's Common Benefits claim, any such argument was doomed. Mr. Butler asserts unequal treatment. "Unequal treatment is 'a type of personal injury [that] ha[s] long [been] recognized as judicially cognizable,' and virtually every circuit court has reaffirmed—as has the Supreme Court—that a 'discriminatory classification is itself a penalty,' and thus qualifies as an actual injury for standing purposes, where a citizen's right to equal treatment is at stake." *Hassan v. City of New York*, 804 F.3d 277, 289–90 (3d Cir. 2015) (citations and footnote omitted).

*Preservation*

The State does not argue that Mr. Butler failed to exhaust his administrative remedies, but it does argue that he failed to preserve any claim of *injury* in this case. This argument is the counterpart to the State's standing argument. The claim is that Mr. Butler did not specifically grieve his actual injury to his right of access to courts. As noted, there is no access-to-courts claim in this case, and the court otherwise finds his Common Benefits claim preserved.

*Common Benefits*

The Vermont Supreme Court has described the contemporary analysis of Common Benefits claims as follows:

> When a statute is challenged under Article 7, we first define that "part of the community" disadvantaged by the law. We examine the statutory basis that distinguishes those protected by the law from those excluded from the state's protection. Our concern here is with delineating, not with labelling the excluded class as

"suspect," "quasi-suspect," or "non-suspect" for purposes of determining different levels of judicial scrutiny.

We look next to the government's purpose in drawing a classification that includes some members of the community within the scope of the challenged law but excludes others. Consistent with Article 7's guiding principle of affording the protection and benefit of the law to all members of the Vermont community, we examine the nature of the classification to determine whether it is reasonably necessary to accomplish the State's claimed objectives.

We must ultimately ascertain whether the omission of a part of the community from the benefit, protection and security of the challenged law bears a reasonable and just relation to the governmental purpose. Consistent with the core presumption of inclusion, factors to be considered in this determination may include: (1) the significance of the benefits and protections of the challenged law; (2) whether the omission of members of the community from the benefits and protections of the challenged law promotes the government's stated goals; and (3) whether the classification is significantly underinclusive or overinclusive.

*Baker v. State*, 170 Vt. 194, 212–14 (1999) (citations omitted).

As far as the record goes, in-state and out-of-state inmates get access to the same legal materials, which does not include Mississippi state law materials or CoreCivic policies. Mr. Butler's claim is that providing identical materials potentially prejudices Mississippi inmates as there may be issues related to conditions of confinement in Mississippi which are unique to Mississippi law. This point is well taken in some respects. As the Vermont Supreme Court has described: "Equal protection 'does not just mean treating identically situated persons identically.' The issue is whether the groups involved are *similar in relevant aspects*. There must be 'some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified.'" *Nichols v. Hofmann*, 2010 VT 36, ¶ 17, 188 Vt. 1 (citations omitted). The relevant aspect is access to courts to challenge conditions of confinement.[3]

All Vermont inmates, wherever located, have an identical potential need for Vermont State legal materials or other mechanisms of access which can be used for purposes of attacking sentences or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 355 (1996) ("*Bounds* does not guarantee

---

[3] To be clear, however: Mr. Butler's claim is for access to specific legal materials only. He has not alleged and does not claim that inmates in Vermont have constitutional access to courts while inmates in Mississippi do not.

inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").

The vast bulk of prison litigation brought by Vermont inmates can be disposed of with reference to Vermont and federal law and Vermont courts routinely entertain such actions. This case is an example. There may be some conditions of confinement issues which might not be able to be brought in Vermont because of a lack of personal jurisdiction in Vermont over Mississippi residents who would not have sufficient contacts with Vermont or because the matter must be presented directly to CoreCivic or in the courts of Mississippi for some other reason. However, the court is not presented with such a case here. Mr. Butler's Common Benefits claim is wholly abstract.

There is no Vermont statute that requires the DOC to provide Mr. Butler, wherever located, with the legal resources he seeks. The DOC's Directive #385 is to similar effect. It establishes a high-level policy recognizing that the DOC will endeavor to facilitate access to the courts and it does not spell out exactly how it may do so. It does not establish any right to specific legal materials. And, as noted, there is no underlying violation of Mr. Butler's right of access-to-the-courts at issue in this case.

At a minimum, Mr. Butler has access to many legal materials other than Mississippi state law and, apparently, CoreCivic policies. He has access to legal representation from the Vermont Prisoners' Rights Office generally and has specific statutory rights to representation as well. See, e.g., 13 V.S.A. §§ 5232–5233. He also has access to the DOC's legal education director. There is no basis but pure speculation in the record to think that if Mr. Butler truly needed access to Mississippi state law or a CoreCivic policy that there would be no way to get it.

Thus, while Mr. Butler may not be experiencing effectively the same conditions in Mississippi that he might if he were housed in Vermont, nothing in the record reveals any sort of deprivation of constitutional magnitude. The court declines to construe the Common Benefits Clause to require the sort of "sameness" Mr. Butler evidently seeks when there is, as here, no practical injury to any cognizable rights.

ORDER

For the foregoing reasons, the State's motion for summary judgment is granted. Mr. Butler's motion is denied. The State shall submit a form of judgment. V.R.C.P. 58(d).


Robert R. Bent,
Judge