Filed 07/21/25

VERMONT SUPERIOR COURT

Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-00235

| | |
|---|---|
| John Discola,<br>        Petitioner<br><br>v.<br><br>Nicholas Deml, Commissioner, Vermont<br>Department of Corrections, and Tallahatchie<br>County Correctional Facility,<br>        Respondents | DECISION ON MOTION |

## RULING ON RESPONDENT'S MOTIONS TO DISMISS

In this Rule 75 case, Petitioner John Discola seeks a writ of mandamus against Respondent Nicholas Deml, Commissioner of the Vermont Department of Corrections ("DOC"), to address his allegation that the commissary processing fees he is charged at his out-of-state correctional facility are unfair and constitute a violation of DOC's obligations under 28 V.S.A. § 122. DOC has moved to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Vermont Rules of Civil Procedure. On July 8, 2025, the Court heard oral argument on the motion. Petitioner was present by Webex and was represented by Dawn Seibert, Esq. Respondent DOC was represented by AAG Pamela Eaton. For the reasons discussed below, DOC's motion is GRANTED.

### Factual Background

For purposes of deciding the instant motion, the Court accepts the following facts alleged in the Amended Complaint as true. The Court makes no finding as to their accuracy.[1]

John Discola is an inmate housed the Tallahatchie County Correctional Facility ("TCCF") in Mississippi that is owned and operated by CoreCivic of Tennessee, LLC ("CoreCivic"). Am. Comp. ¶ 8. DOC entered into a contract with CoreCivic in 2018 to house Vermont inmates at TCCF. *Id.* ¶ 6. CoreCivic first contracted with Keefe Group, LLC ("Keefe") in 2014 to provide commissary services in its facilities and has extended the contract twice; the current contract does not expire until the end of 2028. *Id.* ¶¶ 2-5. Mr. Discola is a Vermonter who is incarcerated by DOC and was sent to TCCF to serve his sentence. *Id.* ¶ 8. He regularly purchases items from

---

[1] *See Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514 ("On a motion to dismiss, the court must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor.").

the TCCF commissary and pays processing fees for his orders. *Id.* ¶ 9. The processing fees charged by Keefe at TCCF are more than six times greater than those charged at Vermont facilities. *Id.* ¶ 12.

Petitioner asserts that TCCF's "outrageous and onerous processing fee at TCCF is a direct result of [DOC] failing to ensure that CoreCivic adheres to 28 V.S.A. § 122 in its contracting practices that govern commissary services for Vermonters." *Id.* ¶ 13. The statute at issue provides as follows:

> For the purpose of securing programming and services for offenders, the Department of Corrections shall publicly advertise or invite three or more bids. The contract for any such programming and services shall be awarded to one of the three lowest responsible bidders, conforming to specification, with consideration being given to the time required for provision of services, the purpose for which it is required, competency and responsibility of bidder, and his or her ability to render satisfactory services; but the Commissioner with the approval of the Secretary of Human Services shall have the right to reject any and all bids and to invite other bids.

28 V.S.A. § 122. Petitioner seeks an injunction from this Court "ordering [DOC] to ensure that CoreCivic follows the contracting process for commissary services required by 28 V.S.A. § 122." Am. Comp. at 3.

Discussion

"The purpose of a motion to dismiss is to test the law of the claim, not the facts which support it." *Powers v. Office of Child Support*, 173 Vt. 390, 395, 795 A.2d 1259, 1263 (2002). When considering a Rule 12(b)(6) motion, the court assumes the truth of the facts alleged, making all reasonable inferences in the plaintiff's favor. *Fleurrey v. Dep't of Aging & Indep. Living*, 2023 VT 11, ¶ 4, 217 Vt. 527. Dismissal is proper if "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 6, 198 Vt. 420 (quotation omitted). As our Supreme Court has held, "where the plaintiff does not allege a legally cognizable claim, dismissal is appropriate." *Montague*, 2019 VT 16, ¶ 11 (citation omitted).[2]

"Rule 75 provides for review of 'action or failure or refusal to act by an agency of the state or a political subdivision thereof, including any department, board, commission, or officer, that is not reviewable or appealable under Rule 74.'" *Rose v. Touchette*, 2021 VT 77, ¶ 13 (quoting V.R.C.P. 75(a)). As relevant here, Rule 75 authorizes relief in the nature of a writ of mandamus to "command . . . an official, agency, or lower tribunal to perform a simple and definite ministerial duty imposed by law." *Wool v. Menard*, 2018 VT 23, ¶ 11, 207 Vt. 25

---

[2] The standard for dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) is essentially the same. *See, e.g.*, *Off. of Auditor of Accts. v. Off. of Att'y Gen.*, 2025 VT 36, ¶ 7, __ A.3d __ ("Under both rules, courts assume as true the nonmoving party's factual allegations and accept all reasonable inferences that may be drawn from those facts." (quotation omitted)).

(quotation omitted). Mandamus is an "extraordinary remedy" and is only appropriate when the following three conditions are met:

> (1) when a party has a clear and certain right to the action sought by the request for mandamus; (2) the request is for the enforcement of ministerial duties, not those that involve the exercise of an official's judgment or discretion; and (3) there is no other adequate remedy at law.

*Maple Run Unified Sch. Dist. v. Vt. Human Rights Comm'n*, 2023 VT 63, ¶ 11, 218 Vt. 496 (quoting *Island Indus., LLC v. Town of Grand Isle*, 2021 VT 49, ¶ 21, 215 Vt. 162). "A writ of mandamus can enforce the performance of only existing duties," but does not "create new duties nor require of a public officer more than the law has made it his duty to do." *Rheaume v. Pallito*, 2011 VT 72, ¶ 7, 190 Vt. 245. Thus, to determine whether Petitioner is entitled to mandamus, the Court must first determine whether 28 V.S.A. § 122 applies to the commissary fees charged at TCCF pursuant to the contract between CoreCivic and Keefe.

Section 122 provides that when DOC seeks to contract "[f]or the purpose of securing programming and services for offenders," it shall engage in a public competitive bidding process. 28 V.S.A. § 122. The parties do not dispute that Petitioner is an "offender" as that term is defined in the statute. *See* 28 V.S.A. § 3(8) ("Offender" means any person convicted of a crime or offense under the laws of this State . . . ."). However, that is not the end of the inquiry. Petitioner does not allege that DOC violated § 122 in contracting with CoreCivic to house its inmates nor that DOC improperly contracted with Keefe to provide him with programming or services. Rather his claim is that, in contracting with CoreCivic, DOC has an obligation to require CoreCivic to comply with § 122 in its contracts with third parties, and DOC failed to do so. The Court disagrees.

On its face, 28 V.S.A. § 122 imposes a duty on *DOC* to engage in competitive bidding when *it* contracts to provide programming and services for offenders. *See Wool v. Menard*, 2018 VT 23, ¶ 15, (noting that § 122 "imposes a nondiscretionary duty upon DOC to solicit three or more bids whenever it seeks to contract for services for offenders"). As noted above, the services Petitioner challenges are not contracted for or provided by DOC. Petitioner's request for relief concedes this point, in that it seeks an order requiring DOC "to ensure that CoreCivic follows the contracting process for commissary services required by 28 V.S.A. § 122." Under the section's plain language, however, DOC's obligation to follow a competitive bidding process does not apply to contracts that may exist between third parties in facilities where Vermont inmates are housed, nor does the statute impose a duty to engage in competitive bidding on such other parties. A court's "objective in interpreting statutes is to determine and give effect to the intent of the Legislature." *Westcott v. Mack Molding Co.*, 2024 VT 85, ¶ 19, 331 A.3d 1083 (quotation omitted). "Where the Legislature's intent can be ascertained from the plain meaning of the statute, [courts] interpret the statute according to the words the Legislature used." *Herald Ass'n, Inc. v. Dean*, 174 Vt. 350, 354, 816 A.2d 469, 474 (2002) (citation omitted). If the Legislature had intended for DOC's third-party contractors to be bound by the provisions of § 122, it could have included such a requirement in the statute. But in the absence of any such language, the Court must conclude that DOC has no such obligation.

The cases relied on by Petitioner in support of his argument do not compel a contrary result. First, Petitioner asserts that the "protection of Vermont law follows incarcerated individuals who are sent to private out-of-state facilities," citing *Nichols v. Hofmann*, 2010 VT 36, 188 Vt. 1. *See* Am. Compl. at 2. In *Nichols*, the plaintiff inmates were housed in Kentucky and filed a complaint for injunctive relief against DOC asserting that 28 V.S.A. § 802a(c) gave them the right to use debit calling cards when making telephone calls. 2010 VT 36, ¶¶ 2-3. Section 802a(c) provides: "When an inmate requests and receives a list of parties approved to receive telephone calls, the inmate shall be provided the option of using a debit or collect call system to place such calls." In determining whether plaintiffs had stated a claim for relief, the Vermont Supreme Court construed the plain language of the statute, including the definition of "correctional facility," which is "any building . . . of or supported by the Department and used for the confinement of persons committed to the custody of the Commissioner." *Id*. ¶ 6 (quoting 28 V.S.A. § 3(3)); *see also id*. (noting that "inmates" is defined as "any person . . . committed to the custody of the Commissioner . . . and . . . committed to a correctional facility" (quoting 28 V.S.A. § 3(5)). The Court held that "the plain language of the definition of 'correctional facility' demonstrates that it encompasses out-of-state private prisons that house offenders under DOC custody." *Id*. ¶ 7. Thus, because the provision applied to Vermont inmates wherever they are housed, and the Kentucky facility fit within the definition of "correctional facility," the Court concluded that the plaintiff inmates had "the statutory right to use debit cards for telephone calls when housed in an out-of-state private correctional facility." *Id*. ¶¶ 7, 13.

Unlike *Nichols*, the provision at issue here does not confer any rights on Vermont inmates or state what services must be provided to them, whether housed in state of out of state. On the contrary, it sets requirements for DOC's contracting process for programs and services it provides to inmates. Again, Petitioner does not contend that the DOC failed to comply with the competitive bidding statute when it contracted with CoreCivic to house its inmates. Accordingly, *Nichols* is inapposite.

Second, Petitioner asserts that "this case is on all fours" with *Wool v. Menard*, 2018 VT 23. In *Wool*, a Vermont inmate sought to enforce DOC's statutory obligation to negotiate contracts "to provide telephone services to inmates in state correctional facilities in a manner that provides for the lowest reasonable cost to inmates." 2018 VT 23, ¶ 1. The plaintiff relied on 28 V.S.A. § 802a(d), which states: "Any contract to provide telephone services to inmates in State correctional facilities shall be negotiated and awarded in a manner that provides for the lowest reasonable cost to inmates, to their families, and to others communicating with inmates." The lower court "found that § 802a(d) did not purport to control the manner in which DOC negotiated telephone services contracts for inmates, and therefore did not impose a ministerial duty that plaintiff could enforce through mandamus." *Id*. ¶ 14. In reversing the dismissal, the Supreme Court held that § 122 applies to DOC's contracts for telephone services, and therefore imposes a nondiscretionary duty to engage in the competitive bidding process in connection with such contracts. *Wool v. Menard*, 2018 VT 23, ¶ 15. As the Court explained, the "purpose behind competitive bidding requirements is to safeguard the public against fraud, favoritism, graft, extravagance, improvidence, and corruption and to ensure honest competition for the best work or supplies at the lowest reasonable cost." *Id*. ¶ 18 (quotation and emphasis omitted). Because plaintiff alleged that DOC had failed to use the competitive bidding process, he had stated "sufficient facts to show that he has a clear legal right to the relief sought." *Id*.

4

Here, Petitioner is not seeking to enforce the statutory bidding requirements for DOC's own contracts in order to protect the Vermont public by ensuring honest competition among bidders that would lead to the lowest reasonable cost for the best work or supplies. *See Wool v. Menard*, 2018 VT 23, ¶ 18 ("Section 122 prescribes a mandatory method, competitive bidding, for DOC to negotiate and award contracts to achieve the lowest reasonable cost."). Instead, he is contesting the terms of the contract between CoreCivic and Keefe, which involves transactions outside the State and beyond the reach of § 122. Moreover, unlike *Wool*, Petitioner does not identify any statute similar to § 802a(d) that affords specific rights to inmates, whether housed in Vermont or out of state. Therefore, Petitioner's reliance on *Wool* is misplaced.

In short, the Court concludes that 28 V.S.A. § 122 does not apply to the contract between CoreCivic and Keefe, nor does it impose any obligation on DOC to control the contracting process used by CoreCivic. Because Petitioner has failed to establish the first element of mandamus – a clear and certain right to the action sought by the request – his Complaint must be dismissed. *Cf. Rheaume*, 2011 VT 72, ¶¶ 9-11, 190 Vt. 245 (affirming dismissal on grounds that programming decisions are not reviewable for mandamus under Rule 75).

Order

For the foregoing reasons, DOC's motion to dismiss (Mot. # 8) is GRANTED. Petitioner's Complaint against DOC is DISMISSED.

The Court further notes that this action has been pending for 18 months without service on Respondent Tallahatchie County Correctional Facility. Nor does it appear that Petitioner can assert a Rule 75 action in this Court against TCCF. Accordingly, the Complaint against TCCF is DISMISSED without prejudice. *See* V.R.C.P. 41(b)(1)(ii).

Electronically signed on July 21, 2025 at 10:40 AM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

5