*Wool v. Menard*, No. 724-12-17 Wncv (Tomasi, J., Mar. 23, 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 724-12-17 Wncv |
|---|---|

Kirk Wool,
  Plaintiff

  v.

Lisa Menard, Commissioner,
Vermont Department of Corrections,
  Defendant

### Opinion and Order on Mr. Wool's Motion to Reopen Discovery and the State's Motion to Dismiss

Plaintiff Kirk Wool is an inmate in the custody of Defendant the Vermont Department of Corrections (DOC). At some point during his incarceration, he acquired a JPay computer tablet with which he bought and could access computer games and songs. When he was housed in a Michigan facility, he was permitted to have and use his JPay. He subsequently was transferred to a Pennsylvania facility. He alleges that when he was transferred from Michigan to Pennsylvania, the DOC wrongfully refused to permit him to take his JPay with him. He claims that the Pennsylvania facility permitted incoming Vermont inmates to bring these devices and retain them in Pennsylvania, but the DOC falsely asserted the opposite and then forcibly dispossessed affected Vermont inmates of their JPays. Mr. Wool alleges that he was told that the DOC would destroy his JPay unless he sent it out of the facility. Mr. Wool sent his JPay to a friend and thus lost possession of it.

Ever since, he has been unable to regain possession of it. Mr. Wool initiated this case seeking the return of his JPay or monetary compensation for its loss.

The pending motions consist of Mr. Wool's motion to reopen discovery and the State's latest motion to dismiss. To understand these motions in proper context, a brief review of the history of this case is necessary.

1.    Procedural history of this case

At the time of the original complaint (filed December 18, 2017) in this case, Mr. Wool was in the Pennsylvania facility. He sought the return of his JPay or monetary compensation for its value.[1] His legal claims included, among others, replevin, and he sought to have the case certified a class action with himself, a nonlawyer, acting as class counsel. He attached to his complaint evidence of an apparently exhausted grievance proceeding, including a final decision by the Vermont Commissioner stating, "The Pennsylvania DOC does not allow for JPay tablets. . . . You were allowed to send your tablet out of the facility at the DOC's expense. No reimbursement is due. Your appeal is denied."

The DOC filed a motion (March 16, 2018) to dismiss the December 18, 2017 complaint on numerous bases, including that the case could not be certified as a class action and thus "all similarly situated" plaintiffs should be dismissed from the case. Mr. Wool responded to the motion to dismiss with a May 14, 2018 amended

---

[1] Mr. Wool stresses that he vastly prefers the return of his JPay to monetary relief because its content has sentimental value.

complaint. In a July 31, 2018 decision, the Court noted that the only defendant properly served in the case is the State itself. It ruled that the case cannot be certified a class action without, among other things, a lawyer to serve as class counsel, and that Mr. Wool, a nonlawyer, cannot be class counsel. Otherwise, the Court granted the motion to amend and declined to rule any further on the motion to dismiss in light of the amendment.

On August 31, 2018, Mr. Wool filed motions for purported extraordinary relief and to "revert" back to his original complaint (withdrawing the amended complaint). By these motions, Mr. Wool claimed to be seeking to clarify any confusion over the issue of administrative exhaustion caused by his May 14, 2018 complaint. The Court denied the motion for extraordinary relief and granted the motion to revert. The December 18, 2017 complaint again became the active complaint. Mr. Wool also sought reconsideration of the Court's class certification decision, which the Court denied.

On October 16, 2018, Mr. Wool notified the Court of his new Mississippi address. He had been transferred from the Pennsylvania facility to a Mississippi facility.

The State filed a new motion to dismiss on November 29, 2018 again addressing the original December 18, 2017 complaint. It sought dismissal of all claims against Commissioner Menard in her individual capacity. It further sought dismissal of the replevin claim, any claim based on "misinformation," and any claims based on equal protection or common benefits. It further argued that any

3

claims (including for injunctive relief) based on the conditions of confinement in Pennsylvania are moot now that Mr. Wool is no longer in the Pennsylvania facility.

The case was scheduled for hearing on June 3, 2019. At the hearing, the Court dismissed the claim styled as replevin as its nature is possessory, and the State does not possess Mr. Wool's JPay. Mr. Wool assented to the dismissal of Commissioner Menard in her individual capacity, and he recognized that GEO Group is not a party to the case.[2] The Court thus clarified that the only defendant in this case is the State.

Mr. Wool also clarified at the June 3 hearing the principal allegations of his claim. He claims that he was allowed to possess his JPay in Michigan, and the Pennsylvania facility to which he was to transfer *also* permitted him to have his JPay. Vermont inmates in Vermont at the time also were permitted to have JPays.[3] Regardless, Mr. Wool alleges that the DOC arbitrarily determined that Michigan prisoners transferring to Pennsylvania could not keep their JPays based solely on the false representation that the Pennsylvania facility would not permit them and with the intent to persecute the inmates. Having since transferred to Mississippi,

---

[2] GEO Group's party status had been in some controversy.

[3] The State objected at the hearing, consistent with the Commissioner's decision on Mr. Wool's administrative grievance, that the Pennsylvania Department of Corrections *did not* permit incoming Vermont inmates to bring their JPays to Pennsylvania. However, that is a factual issue that awaits the presentation of evidence. Mr. Wool clearly alleges the contrary: that Pennsylvania permitted incoming Vermont inmates to bring their JPays and the only reason they could not do so is because the Vermont DOC unilaterally prevented it.

4

Mr. Wool observed that Vermont inmates who transferred to Mississippi directly from Pennsylvania, including him, have no JPays. Vermont inmates who transferred to Mississippi from Vermont, and who had JPays in Vermont, now have them in Mississippi. The DOC allegedly nevertheless will not permit inmates such as Mr. Wool, who previously lost possession of their JPays, to have them returned.

The Court concluded at the hearing, and Mr. Wool assented, that his operative complaint had become moot with his transfer to Mississippi.[4] With the parties' assent, the Court set a deadline of June 17, 2019 for Mr. Wool to amend the complaint or the case would be dismissed. The Court also set other scheduling dates as reflected in its written June 3 entry order: deadline for discovery requests—June 28, 2019; deadline for motions—August 15, 2019; case to be trial-ready by September 1, 2019 (if no motions filed).

In response, Mr. Wool filed an amended complaint on June 17. The June 17 complaint is a refinement in some respects of Mr. Wool's prior complaints but includes virtually no allegations or alterations to his claims as related to his current location in Mississippi as may have been anticipated at the June 3 hearing. To the extent that Mr. Wool is attempting to bring an equal protection or common benefits claim, this complaint is unclear as to which classes of inmates he asserts were or are similarly situated.

---

[4] This ruling presumably resulted from a belief that Mr. Wool's claim had morphed into one contingent on his current circumstances in Mississippi rather than the circumstances he experienced at the time of the loss of his JPay or the day-to-day conditions of confinement in Pennsylvania.

On July 5, the State filed a motion to dismiss Mr. Wool's June 17 complaint. It argued that any 42 U.S.C. § 1983 claim for damages is not viable because the State is not a person subject to a damages claim pursuant to § 1983. It argued that the complaint more generally fails to state a claim for any violation of equal protection or common benefits because inmates in different prisons as a matter of law cannot be similarly situated. And, it argued that Mr. Wool fails to state a claim for damages insofar as he cannot be considered to have suffered any legally cognizable loss because he was permitted to send his JPay to a friend.

Before the Court ruled on the State's motion to dismiss, Mr. Wool filed another motion to amend the complaint, along with the proposed amendment, on August 12, 2019. The August 12 complaint is essentially similar to the stream of previous iterations. It appears, however, to also assert that there is a Vermont or Mississippi policy expressly allowing Vermont inmates in Mississippi to have their JPays returned to them on request. *See* August 12, 2019 Complaint 25–27. At the same time, it appears to assert that Vermont inmates in Mississippi who were transferred there directly from Pennsylvania (such as Mr. Wool) nevertheless still are not permitted to have their JPays returned to them. *See id.* ¶ 48.

The Court granted Mr. Wool's August 12, 2019 amendment on September 16, 2019. It summarily denied the State's July 5 motion to dismiss Mr. Wool's June 17 complaint without prejudice in light of the amendment.

Thereafter, on December 23, 2019, Mr. Wool filed the pending motion to

6

reopen discovery, which closed on June 28, 2019 according to the Court's June 3, 2019 entry. Although Mr. Wool describes his need for additional discovery to be "limited," he purports to now seek "all documents that [detail] the right, privileges and obligations of inmates purchasing a JPay tablet as well as purchasing content such as music and video games, [etc.] As well as the obligations and duties of JPay. . . . [T]his request would also include [a] copy of the Contract between JPay and Vermont DOC." Motion to Reopen 1 (filed December 23, 2019).

Three days later, the State filed the pending motion to dismiss. It argues that Mr. Wool has failed to preserve any issues contingent on his placement in Mississippi for failure to have raised them in any exhausted administrative proceeding (at least any within the scope of this case). It again argues that any 42 U.S.C. § 1983 claim for damages is not viable because the State is not a person subject to a damages claim pursuant to § 1983. It argues that any equal protection or common benefits claim is not viable because inmates in different prisons are not similarly situated as a matter of law and because Mr. Wool has not alleged any improperly motivated discriminatory decision-making. Finally, the State argues that, as a matter of law, Mr. Wool has not suffered any compensable loss because he was allowed to send his JPay home.

In sum, from the start, Mr. Wool has been attempting to assert variously expressed legal claims all arising out of his loss of possession of his JPay, an event that is alleged to have occurred once, when he was in Michigan and about to transfer to Pennsylvania. While his recharacterizations of his legal claims to some

7

extent have been a moving target, it at least is clear that he is attempting to raise both an equal protection and common benefits claim. It is unclear who the allegedly similarly situated classes are, however. Mr. Wool variously compares his situation to (a) inmates who remained in Vermont; (2) inmates in the custody of Pennsylvania and either housed in Pennsylvania or out of state who then transferred to Pennsylvania; and (3) inmates in Mississippi, whether transferred there from Vermont or directly from Pennsylvania. It is reasonably clear that when he was first dispossessed of his JPay, he grieved that issue and ultimately exhausted his administrative remedies as evidenced by a decision of the Commissioner of DOC. He was in Pennsylvania at the time.

2.      Mr. Wool's Motion to Reopen Discovery

Mr. Wool initiated this case on December 18, 2017. Discovery closed on June 28, 2019 by court order. Though Mr. Wool has repeatedly amended his complaint, his basic cause of action has been static throughout. He believes that the DOC wrongfully dispossessed him of his JPay when he was in Michigan preparing to relocate to Pennsylvania. His attempt to reopen discovery at this point to inquire into rights and obligations related to JPays comes far too late and is not accompanied by any explanation for his failure to have sought this discovery earlier. The subject of the proposed discovery has been at the heart of this case from the beginning. There is no good cause to reopen discovery. This motion is denied.

3.      The State's Motion to Dismiss

In the State's motion to dismiss, it argues (a) that Mr. Wool has failed to

8

preserve any issues contingent on his placement in Mississippi; (b) that any claim for damages based on an alleged violation of federal rights is not viable against the State; (c) that any equal protection or common benefits claim is not viable because inmates in different prisons as a matter of law cannot be similarly situated; (d) that any equal protection or common benefits claim is not viable because there is no allegation of improperly motivated discriminatory decision-making; and (e) that Mr. Wool has not suffered any compensable loss because he was allowed to send his JPay home.

     a.    <u>Preservation</u>

Mr. Wool grieved the loss of his JPay when it occurred, and he appears to have exhausted the grievance procedure, culminating in a decision by the Commissioner to the effect that he was not entitled to compensation because Pennsylvania policy prevented him from taking his JPay there. That exhaustion appears to have occurred long before Mr. Wool ever was transferred to Mississippi. The State now argues that Mr. Wool has not preserved any issue related to his placement in Mississippi. Mr. Wool has responded by asking for an opportunity to again amend his complaint, to what end is unclear. He does not assert that he in fact has preserved any claims based on his current location in Mississippi. And, he could not have preserved any such claims in the administrative proceeding that preceded this case because he had not yet been relocated to Mississippi when this case began.

Generally, to raise a matter in court, an inmate must exhaust the

9

administrative procedure that was available and preserve any issue for review in court by first raising it before the agency. *See generally Pratt v. Pallito*, 2017 VT 22, 204 Vt. 313 (distinguishing preservation from exhaustion and analyzing preservation in prisoner grievance case in depth). The purpose of the preservation requirement is to ensure that the agency has a fair chance to address an issue before it is presented to the judicial branch for further review. *Id.*, 2017 VT 22, ¶ 16. "[T]o properly preserve an issue, a party must present the issue to the administrative agency 'with specificity and clarity in a manner which gives the [agency] a fair opportunity to rule on it.'" *Id.* (citation omitted).

Mr. Wool could not have preserved for review any issues contingent on his placement in Mississippi because he filed this case before he was transferred there. He has asserted that there is a policy in Mississippi that inmates may have their JPays returned to them. If he has attempted to take advantage of such a policy and been refused, and he seeks review of that refusal, he must first present that matter to the DOC for administrative determination *prior* to review in court. To the extent that Mr. Wool is attempting to raise any such claim in this case, it is dismissed for lack of preservation. Mr. Wool's offer to again amend his complaint cannot cure the historical failure to have presented such an issue to the agency prior to filing suit.

On the other hand, Mr. Wool's principal claim is related to the loss he suffered when he was originally dispossessed of his JPay. It appears that claim was grieved at the time. Therefore, as to this ground, the State's motion is granted in part and denied in part.

10

b.    Damages based on Violation of a Federal Right, 42 U.S.C. § 1983

Section 1983 is the statutory mechanism by which one seeks relief for violation of a federal right against a "person."[5] 42 U.S.C. § 1983. The State argues that to the extent that Mr. Wool is seeking monetary relief against it for the violation of any federal rights, such a claim is not permissible because neither a state nor a state employee in official capacity is subject to a claim for monetary damages under § 1983. See *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 n.10 (1989); *Shields v. Gerhart*, 155 Vt. 141, 150 (1990); *Heleba v. Allbee*, 160 Vt. 283, 286 (1993). The only defendant in this case is the State.

Mr. Wool's primary response to the State's argument is that if he needs to name a different "person" as a defendant, then he should be permitted to amend the complaint yet again to do so. He has not more formally sought to add a defendant or amend the complaint. Nor has he identified such a person, much less provided a proposed amended complaint that describes any "personal involvement" of such a prospective defendant in the alleged constitutional deprivation. *See, e.g., Hendricks v. Coughlin*, 114 F.3d 390, 394 (2d Cir. 1997) (Section 1983 liability cannot be based on *respondeat superior* but only on direct personal fault.). The Court offers, however, that while it has liberally indulged Mr. Wool's unconventional pleading practice up to now, this case is well beyond the time when it was supposed to be

---

[5] While Mr. Wool insists in briefing that he is not relying on 42 U.S.C. § 1983, he offers no cogent alternative legal route to advance his federal claim(s).

11

trial-ready, and it is long past time to bring in new parties, which at a minimum would start the discovery clock over. Adding new individual capacity parties to this case at this time would not be reasonable.

Any claim for monetary damages for violation of a federal right against the State is dismissed under § 1983.

c.      Prospective Relief Section 1983

Section 1983 does allow claims for prospective relief to be filed against state officers in their official capacities. A "state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Further, while they cannot be sued for retrospective relief due to the immunity provided by the 11th Amendment to the federal Constitution, state officials in their official capacities can be sued for *prospective relief. See, e.g., Kanuszewski v. Michigan Dep't of Health & Human Servs.*, 927 F.3d 396, 417 (6th Cir. 2019) (citing *Ex Parte Young*, 209 U.S. 123, 59–60 (1908)). Importantly, however, this doctrine "does not permit judgments against state officers declaring that they violated federal law in the past, nor does it allow a plaintiff to adjudicate the legality of past conduct. *Higdon v. Tusan*, 746 F. App'x 805, 810 (11th Cir. 2018) (citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

As noted above, Mr. Wool is now in Mississippi. His access to property and requests for property need to be analyzed based on his present circumstances, and

12

grieved through the applicable process. At this point, while a conclusion that the Defendant violated his rights in Pennsylvania might warrant a retrospective damages award, it would not control the determination of whether Mr. Wool's rights are presently being violated.

Based on the above authorities, as an official capacity claims under Section 1983 rightly afford only prospective relief, and Mr. Wool's claims for such relief in Mississippi have not been grieved, those claims are dismissed without prejudice for lack of exhaustion of administrative remedies. Mr. Wool's Section 1983 claims for prospective relief as to his Pennsylvania claims are dismissed as moot. *See Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 454 (4th Cir. 2017) (when "seeking prospective declaratory and injunctive relief rather than damages, ... allegations in the [c]omplaint of past injuries do[ ] not in [themselves] show a present case or controversy" (internal quotation marks omitted)).
Since he is no longer housed in Pennsylvania, any Court order relating to the State's conduct in connection with that facility would not provide forward-looking relief.

d. Common Benefits—Similarly Situated Classes

Mr. Wool also seeks damages under Vermont's Common Benefits Clause, which protects interests similar to the federal Equal Protection Clause. "The Equal Protection Clause demands that states treat similarly situated people alike, unless they have a rational basis for treating them differently." *Nichols v. Hoffman*, 2010 VT 36, ¶ 16, 188 Vt. 1, 9. No fundamental rights or suspect classes are at issue in

13

this case.  *See* 1 Michael B. Mushlin, *Rights of Prisoners* § 5:3 (5th ed.) ("[W]hen a prison regulation does not implicate fundamental constitutional rights and does not adversely impact on racial minorities or women, courts will apply the rational basis test." (footnote omitted)).  Mr. Wool's equal protection and common benefits claims are articulated differently in different places.  Accordingly, it is unclear which classes of inmates he asserts are similarly situated.

Nevertheless, the State argues that, to the extent that the proposed classes of inmates are located in different prisons, for that reason alone they cannot as a matter of law be similarly situated.  The Vermont Supreme Court rejected precisely this argument in *Nichols*.  The mere fact that inmate classes are located in different prisons is insufficient on its own to render them differently situated for equal protection purposes.  Regardless of different prison locations, the factual issue remains whether "'the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified.'"  *Nichols*, 2010 VT 36, ¶ 17, 188 Vt. at 10.  There is no apparent reason why this issue would differ under the Common Benefits Clause.  The State is not entitled to dismissal on this point.

e.    Common Benefits—Rational Basis

Assuming for the sake of the argument that similarly situated classes are present, the question then turns to whether "the government has 'articulated a legitimate governmental purpose' for the classification, and the classification bears a 'rational relation' to that purpose.  As long as there is some rationality in the

14

classification, it will be upheld even if it is 'seemingly unwise.'" 1 Michael B. Mushlin, Rights of Prisoners § 5:3 (5th ed.). Mr. Wool has clearly alleged that the DOC has acted without any legitimate purpose or rational basis. As in *Nichols*, this is sufficient at the pleading stage.[6] *See Nichols*, 2010 VT 36, ¶ 19, 188 Vt. at 10–11. Again, there is no apparent reason why this issue would differ under the Common Benefits Clause. The State is not entitled to dismissal on this point.

    f.    <u>Compensable Damages</u>

Lastly, the State argues that because Mr. Wool was permitted to send his JPay to a friend, and merely lost possession—not ownership—of it, he therefore as a matter of law can have no compensable damages related to its loss. As support, the State cites *LaPrade v. Menard*, No. 561-10-18 Wncv (Vt. Super. Ct. June 19, 2019), which relied principally on *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002), for the general proposition that "There generally is no constitutional deprivation of property when a prisoner is permitted to send property home that is not allowed to be possessed in prison."

---

[6] In seeking dismissal of Mr. Wool's equal protection and common benefits claims, the State relies primarily on two cases addressing the standards applicable to equal protection violations in the specific context of "selective enforcement" circumstances. *See Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004); *Chandler v. Clark*, No. 1:09–CV–60, 2009 WL 2916687 (D. Vt. Sept. 9, 2009). These authorities have tangential value here at best. The Court does not understand Mr. Wool to be attempting raise a claim of selective enforcement. *See Parker v. Town of Milton*, 169 Vt. 74, 81 (1998) (explaining that an "equal protection claim must be premised on some form of discriminatory state action, either in the form of a discriminatory legislative classification *or* selective enforcement of a facially neutral law" (emphasis added)).

*LaPrade* and *Hatten* are inapposite to this case.  They address whether there is an actionable deprivation of a property right for due process purposes when a prisoner is permitted to send property home or elsewhere for safekeeping the possession of which in prison otherwise would violate a legitimate corrections policy.  Mr. Wool's claim is quite different.  He claims that his JPay *was* permitted in all relevant facilities—Vermont, Michigan, and Pennsylvania—when the DOC arbitrarily and vindictively falsely claimed that Pennsylvania did not permit it, and forcibly dispossessed him of it.  The alleged circumstances are materially different than those of *LaPrade* and *Hatten*.  The State is not entitled to dismissal on this basis.

<u>Conclusion</u>

For the foregoing reasons, Mr. Wool's Motion to Reopen Discovery is denied.  The State's Motion to Dismiss is granted as to the Section 1983 claims[7] and denied as to the Common Benefits claims.

Dated this __ day of March 2020 at Montpelier, Vermont.

 

 

_____
Timothy B. Tomasi
Superior Judge

---

[7] To the extent Plaintiff asserts Section 1983 claims arising out of his Mississippi placement, those claims are dismissed without prejudice.

16